603 F.2d 927
 195 U.S.App.D.C. 345
 CADC 79-71 CITY OF ROCHESTER, a Municipal Corporation in the
State of New York, et al., Appellants,
v.
Langhorne M. BOND, Individually and as Administrator of the
Federal Aviation Administration, et al.
 No. 78-1352.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued 9 Jan. 1979.
Decided 29 March 1979.
As Amended May 25, 1979.
 
 Larry A. Stumpf, Rochester, N. Y., was on the brief for appellants.
 Robert W. Frantz, Atty., Dept. of Justice, Washington, D. C., with whom James W. Moorman, Asst. Atty. Gen., Walter J. Postula, and Robert L. Klarquist, Attys., Dept. of Justice, Washington, D. C., were on the brief for appellees.
 Samuel Miller, Washington, D. C., and Frank S. Hagelberg, Rochester, N. Y., also entered appearances for appellee Malrite Broadcasting, Inc. and Malrite of New York, Inc.
 Before BAZELON, TAMM and WILKEY, Circuit Judges.
 Opinion for the Court filed by WILKEY, Circuit Judge.
 WILKEY, Circuit Judge:
 
 
 1
 The sole question in this appeal is whether the district court had subject-matter jurisdiction over appellants' controversies with the Federal Aviation Administration (FAA) and the Federal Communication Commission (FCC). The district court dismissed the suit, finding that jurisdiction lies exclusively in the courts of appeals.[1] We affirm its decision.
 
 I. BACKGROUND
 
 2
 A. Facts.
 
 
 3
 On 8 May 1973 Malrite Broadcasting Company (Malrite), an appellee in this case, applied to the FCC for a permit to construct a 600 foot radio antenna tower near Rochester-Monroe County Airport in Rochester, New York.[2] In accordance with its regulations the FCC notified the FAA of the proposed construction.[3] The FAA, finding that the tower would be an "obstruction to air navigation" within its regulations, initiated an aeronautical study to determine whether the tower would constitute a "hazard."[4] Although notice of the study was posted at the airport and mailed to interested persons, appellants allegedly were not notified.[5] Other persons and groups who did receive notice participated in the administrative proceedings, including two informal public hearings.
 
 
 4
 On 16 September 1974 the FAA decided that the tower would not be a hazard to air navigation, which decision it affirmed on review on 4 December.[6] Relying on the FAA's "no hazard" determination and its own assessment of the proposed construction, the FCC issued a construction permit on 28 April 1975;[7] and on 8 September the City of Rochester, an appellant in this controversy, issued a building permit for the tower. Construction began later that year and the tower was completed in early February 1976.
 
 
 5
 Responding to residents' complaints about air traffic noise, the Rochester city council held public hearings on 2 and 8 March 1976 attended by, among others, the Air Line Pilots Association (ALPA), an appellant before this court. At the 8 March meeting, the city council adopted a resolution directing the city attorney to petition the FAA to reopen its "no hazard" determination. The city's petition was submitted some three months later.[8] Following a second review of its determination the FAA restated in a letter to the city on 10 September 1976 that the tower, in light of modified flight procedures, was "not hazardous to aircraft or persons on the ground if the aircraft were operated in accordance with established procedures."[9] More than nine months later, on 15 June 1977, the City of Rochester and ALPA (appellants) brought this suit against the FAA and the FCC.
 
 
 6
 B. Course of Proceedings.
 
 
 7
 Appellants filed suit in district court seeking to have the "no hazard" determination and the construction permit set aside.[10] The complaint alleged that the FAA's failure to give adequate public notice of the aeronautical study violated the Federal Aviation Act[11] and certain regulations thereunder.[12] In addition, the FAA and the FCC were alleged to have violated the National Environmental Policy Act of 1969 (NEPA) by failing to prepare environmental impact statements concerning their actions in this matter.[13] The district court dismissed the complaint "because exclusive jurisdiction over challenges to these FCC and FAA actions is in the court of appeals."[14] This appeal followed.
 
 II. ANALYSIS
 
 8
 Plaintiffs are in a common predicament. They have sought review of agency action in the "wrong" court (or so the district court concluded) and inadvertently may have lost any occasion whatsoever for judicial review. Although we think the district court correctly found it had no jurisdiction in this case, that result may not have been obvious. Discussion of the jurisdictional point may remove thereby some uncertainty from the choice of a proper forum in the future.
 
 
 9
 The principles which frame our decision are unexceptionable. The first is that one who has been injured by agency action is presumptively entitled to judicial review. This presumption is codified in the Administrative Procedure Act[15] and evident in the cases,[16] and nothing in the circumstances of this case suggests that appellants' allegations were not reviewable somewhere. Second, Congress, acting within its constitutional powers, may freely choose the court in which judicial review may occur.[17] In the absence of a statute prescribing review in a particular court, " nonstatutory" review may be sought in district court under any applicable jurisdictional grant. If, however, there exists a special statutory review procedure, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.[18] We think that this is so in the present case.
 
 
 10
 Section 402(b) of the Communications Act of 1934 provides that "any . . . person who is aggrieved or whose interests are adversely affected" by an FCC order granting or denying an application for a construction permit may appeal to this court.[19] Similarly, § 1006 of the Federal Aviation Act provides that "(a)ny order . . . issued by the (FAA) . . . shall be subject to review" in this court or in another appropriate court of appeals at the instance of "any person disclosing a substantial interest" therein.[20] Neither statute specifies whether the district court may exercise concurrent jurisdiction when an independent source of such jurisdiction can be found.[21] The district court evidently assumed, and correctly we think, that in this case it may not. Appellants dispute both this assumption and the finding that the instant case is in all respects one to which the special statutory review provisions apply.
 
 
 11
 A. Jurisdiction Under § 402(b) of the Communications Act and § 1006 of the Aviation Act.
 
 
 12
 Appellants apparently do not contest the district court's finding that their claims against the FCC were within this court's jurisdiction under § 402(b), though, of course, they do dispute that our jurisdiction is exclusive. However, appellants disagree that their controversy with the FAA would be within the jurisdiction of the courts of appeals under § 1006, arguing that for various reasons a "no hazard" determination is not an "order" within the meaning of the section.
 
 
 13
 At the outset we observe that it is undisputed that the administrative record compiled by the FAA in the course of its proceedings is adequate for review in the court of appeals, a circumstance we have frequently held to be a principal indicium of "orders" reviewable within the meaning of direct review statutes like those before us.[22] Appellants' arguments are of a somewhat different sort. They contend first that inasmuch as a "no hazard" determination is concededly "advisory," it cannot be an "order" within § 1006.[23] The argument is without merit.[24] Moreover, its helpfulness to appellants' suit is less than obvious. The argument would appear not to distinguish review under § 1006 from review generally, and consequently were we persuaded that the order's "advisoriness" made it unreviewable within § 1006, we doubt it would be reviewable at all. Instead, we are convinced that the ruling is judicially reviewable and only as an "order" within § 1006.
 
 
 14
 The Administrative Procedure Act defines "order" quite expansively as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form."[25] This definition plainly embraces the "no hazard" determination before this court, and although we might in certain circumstances construe "order" more narrowly for purposes of § 1006,[26] we see no reason that any such more narrow construction would focus upon the putatively advisory character of an agency ruling. The FAA's ruling is administratively final, already having been twice reconsidered, and it is declaratory at least in the commonly understood sense of formally ascribing legal significance to facts. The FAA quite reasonably has chosen to conduct such declaratory adjudications, obviously with the intention that its "advice" will affect the proposed construction, even if only informally.[27] We think such final actions, declaratory in character and indisputably reviewably Somewhere, were precisely the sort of matter whose review Congress chose to confine to the courts of appeals.
 
 
 15
 Appellants' second theory of escape from review in the courts of appeals relies, mistakenly, on our decision in International Navigators Council of America v. Schaffer (INCA).[28] In INCA the petitioner had filed a complaint with the FAA under § 1002 of the Federal Aviation Act,[29] alleging that the Administrator was threatening air safety by failing to promulgate certain regulations. Finding that § 1002 contemplated only complaints about violations of the Act by third persons, the FAA treated the complaint as a petition for rulemaking. Petitioner sought reconsideration of its complaint, which was denied, and then review directly in this court. We dismissed, finding that the Administrator's refusal to entertain petitioner's complaint was not an order within § 1006 because the Administrator had no jurisdiction whatsoever over the matter raised by petitioner.[30]
 
 
 16
 Appellants opine that under INCA, direct review under § 1006 is not available where "a party complains of unlawful acts by the agency itself."[31] They are mistaken. The fact that the complaint in INCA concerned the actions of the administrator was legally relevant in that case only insofar as it foreclosed FAA jurisdiction under § 1002 and consequently disabled the Administrator from issuing an order reviewable in this court under § 1006. In the case before us, the allegation that the FAA acted unlawfully has no such consequence.[32] It is undisputed that the FAA had jurisdiction to issue its "no hazard" determination and we have already concluded that its ruling was otherwise an "order" within § 1006. Moreover, it is obvious that appellants' argument proves far too much, for it suggests that direct review in the courts of appeals would never be available when the action of the Administrator were drawn into question, an exaggeration sufficient alone to defeat the construction.
 
 
 17
 B. The Exclusivity of Review in the Courts of Appeals.
 
 
 18
 As we observed at the outset, Congress "may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had."[33] In § 402 of the Communications Act and § 1006 of the Aviation Act Congress has, we think, prescribed the exclusive mode of judicial review of such controversies as this, save for those instances in which the statutory review would be inadequate. Our conclusion should hardly occasion surprise. We follow the decision of this[34] and other courts[35] consistently holding that judicial review under these statutes is exclusive. With respect to § 402(b), we established the principle in 1935 in Sykes v. Jenny Wren Co.,[36] in circumstances not unlike those of the instant case. There a radio licensee brought suit in district court to enjoin the FCC from granting a license modification to a competing radio station. We held that the district court was without jurisdiction because the "appeal provided by section 402(b)" afforded a "plain, adequate, and complete remedy at law."[37] Although not all later cases have observed Jenny Wren's rationale of equitable discretion, they have universally followed its holding.[38]
 
 
 19
 Although the Aviation Act is of somewhat more recent vintage, the law concerning § 1006 is not less settled. Review in the courts of appeals is exclusive, absent extraordinary circumstances, preempting the original jurisdiction of state courts[39] as well as federal district courts.[40] This construction, moreover, enjoys certain textual support unavailable in the case of the Communications Act. Section 1006(d) provides that upon transmittal to the FAA of a copy of the petition for review filed with the court of appeals, "the court shall have exclusive jurisdiction to affirm, modify, or set aside the order complained of."[41] Linguistically, § 1006(d) might permit district court jurisdiction as long as parallel suits were not filed. However, when the Supreme Court construed the nearly identical language in the Federal Power Act it held that the "simple words of plain meaning . . . leave no room to doubt the congressional purpose and intent" to give the courts of appeals exclusive jurisdiction.[42] We have no reason to resist this construction.
 
 
 20
 That exclusive jurisdiction lies in the courts of appeals is further evidenced by the scheme of each act. Finding concurrent jurisdiction under some general jurisdictional mandate would completely undo each act's requirement of a timely petition for review.[43] The timeliness requirement reflects a deliberate congressional choice to impose statutory finality on agency orders, a choice we may not second-guess.[44]
 
 
 21
 Finally, we observe that our decision is wholly consistent with general principles. Section 10(b) of the Administrative Procedure Act codified the presumption evident in the case law that adequate statutory review is exclusive. It provides that "(t)he form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or adequacy thereof, any applicable form of legal action."[45] Likewise, we have observed that "even where Congress has not expressly conferred exclusive jurisdiction, a special review statute vesting jurisdiction in a particular court cuts off other courts' original jurisdiction in all cases covered by the special statute."[46] We decline to abandon the general practice, though we inquire whether special circumstances in this case may warrant exception.
 
 
 22
 C. The Availability of District Court Jurisdiction in Exceptional Circumstances.
 
 
 23
 Although it would be fairly easy to draft a statute which unambiguously prescribed the court in which any given agency action would be reviewable, Congress has not done so. Consequently, courts must infer Congress' jurisdictional choices in those cases not plainly governed by statutory language or history. As we observed, it generally has been supposed that a special statutory procedure is the exclusive means of review in cases to which it applies; jurisdiction thus has turned ordinarily on the relevant statute's use of the term "order," construed over time with varying literalness.[47] Actions which are not (or not yet) orders but which are nonetheless reviewable may be raised in the district court, whose jurisdiction is thus residual insofar as it exists only to review matters for which statutory review is, for one reason or another, inadequate.[48]
 
 
 24
 Appellants invoke district court jurisdiction, but apart from the argument that the FAA's ruling is not an "order," do not attempt to escape the literal inclusiveness of § 402(a) and § 1006. They do suppose, however, whether because of the substantive character of their claims or because they were not parties to the proceedings from which the orders before us arose, that they are too peripheral to this matter to be confined to the special statutory review provisions. These distinctions do not matter. Statutory review is, or at least if timely sought would have been, an adequate means of reviewing appellants' allegations.
 
 
 25
 First, we disagree that the district court may exercise concurrent jurisdiction merely because a violation of NEPA is alleged. The allegation may be raised directly in the courts of appeals;[49] and insofar as it may affect the lawfulness of a directly appealable order we think it must be.[50] The numerous cases cited by appellants in which district courts exercised original jurisdiction over suits complaining of NEPA violations are not to the contrary.[51]
 
 
 26
 The rationale for statutory review is that coherence and economy are best served if all suits pertaining to designated agency decisions are segregated in particular courts. The choice of forum is, as we have said, for Congress and we cannot imagine that Congress intended the exclusivity Vel non of statutory review to depend on the substantive infirmity alleged. The policy behind having a special review procedure in the first place similarly disfavors bifurcating jurisdiction over various substantive grounds between district court and the court of appeals. The likelihood of duplication and inconsistency would exist in either case.
 
 
 27
 Nor is it obvious by what theory we would classify claims in this jurisdictional sense. Perhaps appellants would say that the only claims governed exclusively by the special review provisions are those going to the substantive core of an agency's mandate (to which presumably NEPA would in this case be penumbral). Though such an approach has some intuitional appeal, it would create substantial uncertainty without discernible benefit. Moreover, it would seriously fragment judicial review, particularly of agencies like the FCC who are governed by open-ended "public interest" language[52] liberally read to incorporate other statutory obligations.[53]
 
 
 28
 The decisions of this and other courts confirm the irrelevance of the specific substantive ground alleged. In Carey v. O'Donnell,[54] for example, we held that judicial review of actions of the Civil Aeronautics Board, also governed by § 1006, was exclusively in the court of appeals, even though appellants had alleged violations of the Railway Labor Act and the Age Discrimination in Employment Act.[55]
 
 
 29
 Moreover, construing a similar direct review provision in the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), we held precisely that NEPA-related attacks on statutorily reviewable orders may be raised Only in the court of appeals. We said:
 
 
 30
 When the Congress required that courts of appeals exercise exclusive jurisdiction over petitions to review a FIFRA order, it was to insure speedy resolution of the validity of EPA determinations. See generally International Harvester v. Ruckelshaus, 155 U.S.App.D.C. 411, 478 F.2d 615 (1973); Calvert Cliffs Coordinating Committee v. AEC, 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971). This policy would be defeated if we were to allow the DDT order to be litigated in several proceedings. Since Calvert Cliffs, supra, it has been clear that issues concerning NEPA statements can be developed in full before the administrative agency, without need for separate factual development in district court. At oral argument, counsel for Coahoma was unable to cite any authority for the proposition that NEPA statements can be litigated apart from the proceeding adjudicating the validity of the underlying FIFRA order. Compare Anaconda v. Ruckelshaus, 352 F.Supp. 697 (D.Colo.1972).
 
 
 31
 We therefore hold that all issues pertaining to the validity of the DDT order of June 14, 1972 including questions pertaining to NEPA must be resolved solely in this court.[56]
 
 
 32
 In sum, we think that all issues concerning the lawfulness of an order subject to statutory review must be raised within the statutory proceeding if that remedy is otherwise adequate.[57]
 
 
 33
 Appellants argue, however, that the statutory review procedure is in their case not adequate and the argument, at first blush, has some merit. This admittedly is not a paradigmatic occasion for statutory review. Appellants were not parties to the original agency proceedings; indeed, one of their complaints is the FAA's alleged failure to give them notice of what it was doing. Furthermore, the other allegation, that NEPA obliged the agencies to prepare environmental impact statements, was first raised in district court. In these circumstances the case is procedurally somewhat problematic.
 
 
 34
 The difficulties are, however, of two very different sorts. First, there are those which are capable of repetition despite whatever procedure we prescribe today. For example, where for any reason (including the agency's failure to give notice) an aggrieved person has, like appellants, not participated in the agency proceeding, (1) it may be hard to file a timely petition for review in the court of appeals, and (2) it is somewhat probable that the existing agency record would not permit review of the non-party's allegations anyway. Second, there are those further difficulties occasioned solely by appellants' failure up to now to follow the course we believe to be correct in such circumstances as these.
 
 
 35
 Although neither sort of difficulty is trivial, we think each may be remedied adequately in the court of appeals. This result is more consonant with the purposes of the direct review statutes than would be a narrower construction remitting appellants and persons in like circumstances to district court.
 
 
 36
 The course we contemplate is straightforward. Under the Administrative Procedure Act, application for agency reconsideration generally is not a prerequisite of judicial review of an order that is otherwise final.[58] However, under general principles of review, courts will ordinarily not consider matters not raised before the agency,[59] a circumstance likely to arise when a complainant was not a party to the agency proceeding, and probably inevitable where, as here, a complainant objects to the agency's failure to give notice. In such cases the proper course (and the one expressly mandated by the Communications Act),[60] is to seek reconsideration by the agency. If the matter is reopened, any ensuing final order then may be reviewed in accordance with the review statute. If on the other hand, the agency for any reason declines to reopen the matter, that decision itself would be a statutorily reviewable order.[61] In either case, the complainant is assured of review under the relevant statute, at least of the agency's reasons for not reconsidering its earlier order. The reviewing court then may dispose of the matter in the ordinary fashion. If the administrative record is inadequate for review, the matter may, of course, be remanded to the agency. In the rare instance that a petitioner's allegations necessitate factfinding beyond the competence of the agency, the matter may be transferred to district court.[62]
 
 
 37
 Appellants could have followed this course. Upon learning of the "no hazard" determination and the construction permit, they should have sought reconsideration, raising both the "no notice" and the NEPA allegations. Whatever disposition the agencies made of these petitions would have been reviewable in the court of appeals. As it was, although the City of Rochester petitioned the FAA to reopen its inquiry, (1) the petition omitted any mention whatsoever of alleged NEPA violations and, (2) while the petition was effectively denied in September 1976, the city did not bring its suit in district court until June 1977. Whether appellants fairly may be accused of laches is a question not now before us,[63] but we are at least satisfied that they might have pursued the course which we prescribe today. Moreover, we think that if judicial review is still available at all in this case, it must be had in accordance with § 402(a) of the Communications Act and § 1006 of the Aviation Act. Courts of appeals, acting within those provisions, have discretion enough to hear the merits of any claim brought excusably out of time.[64]
 
 
 38
 For the foregoing reasons, the decision of the district court dismissing appellants' suit for want of subject matter jurisdiction is
 
 
 39
 Affirmed.
 
 
 
 [1]
 City of Rochester v. Bond, No. 77-1028 (D.D.C. 25 Jan. 1978) (Memorandum Decision). Judge Gasch's opinion is reproduced in the Joint Appendix (J.A.) at 125
 
 
 [2]
 We recite the facts as pleaded by appellants and assumed by the District Court for purposes of its jurisdictional ruling. Appellees dispute these facts in certain respects immaterial to this appeal. See note 3 Infra. We, like the District Court, assume the facts as alleged by appellants. See Elmo Division of Drive-X Co., Inc. v. Dixon, 121 U.S.App.D.C. 113, 114, 348 F.2d 342, 343 (1965) (per curiam)
 
 
 [3]
 See Complaint PP 11-12, J.A. at 7; Memorandum Decision, J.A. at 125. Apparently, Malrite in fact may have initially notified the FAA directly. See Brief of FAA and FCC at 4, 39. FAA regulations, in general, require notification by anyone seeking to build structures exceeding 200 feet in height in the vicinity of an airport. 14 C.F.R. 77.13
 
 
 [4]
 The Federal Aviation Act of 1958 broadly authorizes the FAA Administrator to regulate "the use of the navigable airspace under such terms, conditions, and limitations as he may deem necessary in order to insure the safety of aircraft and the efficient utilization of such airspace." 49 U.S.C. § 1348(a) (1976). The Act further provides specifically that the FAA require all persons to give adequate public notice of proposed construction or alteration of any structure "where notice will promote safety in air commerce." 49 U.S.C. § 1501 (1976). Finally, the Act provides that the Administrator may issue any regulations and orders, and conduct such investigations "as he shall deem necessary to carry out the provisions of . . . this (Act)." 49 U.S.C. § 1354(a) (1976). Pursuant to these provisions, the Administrator has promulgated Part 77 of the Federal Aviation Regulations governing "Objects Affecting Navigable Airspace." 14 C.F.R. §§ 77.1 Et seq. These regulations provide, first, that persons proposing to build or modify structures having specified characteristics must give notice to the FAA. 14 C.F.R. §§ 77.11, 77.13, 77.15. The regulations further identify "obstructions to navigation," a narrower class than that for which notice is required. 14 C.F.R. Part 77, Subpart C. If the structure would be an "obstruction," the FAA conducts an aeronautical study to determine if the construction would constitute a hazard to air navigation. 14 C.F.R. § 77.35. The study is to be conducted by the FAA Regional Director for the region where the proposed structure would be built. 14 C.F.R. § 77.35(a). As was done in this case, the Regional Director may solicit comments from interested persons and conduct public meetings for the purpose of "gathering all facts relevant to the effect of the proposed construction or alteration on the safe and efficient use of navigable airspace." 14 C.F.R. § 77.35(b)(1), (3), and (4). The Regional Director then will issue a determination as to whether the proposed construction would be a "hazard to air navigation." 14 C.F.R. § 77.35(c). The Regional Director's determination is final unless a petition for review is granted by the FAA Administrator, as it was in this case. 14 C.F.R. § 77.37(c)(1)-(2)
 
 
 [5]
 See Complaint P 13, J.A. at 7. The City of Rochester was not given notice of the aeronautical study because it was neither an operator of aircraft nor the owner of the airport. Brief of FAA and FCC at 5. The FAA represents that it did mail notice to appellant ALPA at various addresses. Id. at 4, 5; J.A. at 80-83 (Affidavit of James Hennessy). There is some uncertainty as to when appellants in any case had actual notice of either the proposed construction or the "no hazard" determination. There is some indication in the record that the city learned of the "no hazard" determination as early as October 1974, when notified by Monroe County, a party to the proceedings, that it was contesting the determination. See J.A. at 44 (Affidavit of Louis Kash, Corporation Counsel for the City of Rochester); Id. at 153-54 (Statement of Frank Hagelberg). In any event the city acknowledges having "direct knowledge" of the proposed construction at least by July 1975 when Malrite applied to it for a building permit. The city apparently learned of the "no hazard" determination at the same time or later that summer. See J.A. at 44 (Kash Affidavit); Id. at 56 (Letter of Louis Kash to John McLucas, FAA Administrator, 3 June 1976). Assuming appellant ALPA did not receive the mailed notice, it first may have learned of the controversy at the public hearings conducted by the City of Rochester in March 1976
 The FCC gave no prior notice of its intention to grant Malrite a construction permit. See J.A. at 137 (Statement of Walter Postula, Attorney for the United States Department of Justice).
 The point at which appellants had actual notice is material to the question whether they sought judicial review in a timely fashion. See p. --- of 195 U.S.App.D.C., p. 939 of 603 F.2d, Infra.
 
 
 [6]
 Reconsideration was sought by the County of Monroe. See Brief of FAA and FCC, Appendix A, at 66 (Letter of Raymond Keefe, Director of Public Works, County of Monroe, 7 October 1974); Id. at 48 (Letter of FAA to Malrite, 4 December 1974)
 
 
 [7]
 Malrite apparently applied to the FCC for a construction permit on 3 February 1975. See Brief of FAA and FCC, Appendix B, at 83. Complying with FCC regulations, 47 C.F.R. 1.1301 Et seq., Malrite submitted an assessment of the environmental consequences of the proposal. See Brief of FAA and FCC, Appendix B, at 87. Apparently relying on this assessment and its internal sources of information, the FCC determined that an environmental impact statement would not be required. See id. at 9. The FCC followed its customary practice of deferring to the FAA's determination that the construction would not be a hazard to navigation. See Memorandum Decision J.A. at 125; 47 C.F.R. §§ 1.61(f), 17.4(d) (1976); Cf. State of Florida, 29 Pike and Fischer Radio Reg. 2d 511, FCC 74-104 (1974); In re Application of WLCY-TV, Inc., 38 F.C.C.2d 86, 91 (1972)
 
 
 [8]
 See J.A. at 54-57 (Letter of Louis Kash to FAA, 3 June 1976)
 
 
 [9]
 See J.A. at 58 (Letter of Glenn Tigner, Acting Director, Air Traffic Service, FAA, to Louis Kash, 10 September 1976). The second review undertaken was apparently conducted internally by FAA staff and did not reopen the inquiry to the extent, sought by the city, of renewed proceedings in which it might participate
 
 
 [10]
 Additionally, appellants asked the court to compel the FAA to conduct a new aeronautical study and to compel both the FAA and FCC to prepare environmental impact statements. See Memorandum Decision, J.A. at 126. Of course relief in cases like this is always problematic, at least insofar as appellants seek more than a declaration that they were entitled to notice and that NEPA required an impact statement in these circumstances. The construction of the tower was completed more than three years ago, and despite Judge Gasch's facetious remark, J.A. at 151 ("(appellants) probably want to pull your tower down sooner or later"), we think "structural" relief an unlikely possibility. See Maryland Natl. Cap. Pk. & Plan. Comm'n v. U. S. Postal Service, 159 U.S.App.D.C. 158, 171-172, 487 F.2d 1029, 1042-43 (1973)
 
 
 [11]
 See note 4 Supra
 
 
 [12]
 See id
 
 
 [13]
 NEPA § 102(2)(C), 42 U.S.C. § 4332(2)(C) (1976)
 
 
 [14]
 Memorandum Decision at 3, J.A. at 127
 
 
 [15]
 Administrative Procedure Act § 10(a), 5 U.S.C. § 702 (1976)
 
 
 [16]
 See Abbott Labs. v. Gardner, 387 U.S. 136, 140-41, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). See also K. Davis, Administrative Law Treatise § 28.08 (Supp.1970); L. Jaffe, Judicial Control of Administrative Action 336 (1965)
 
 
 [17]
 City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 336, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958)
 
 
 [18]
 See pages --- --- of 195 U.S.App.D.C., pages 938-939 of 603 F.2d, Infra. Of course, in other cases different statutory language and history may disclose a different Congressional choice concerning the applicability of the special review provisions. Thus, for example, the presence in some statutes of a saving clause preserving nonstatutory forms of judicial review may evidence a special concern of Congress that district court jurisdiction be preserved under certain circumstances. See Indep. Cosmetic Mfrs. v. U. S. Dept. of HEW, 187 U.S.App.D.C. 342, 361-362, 574 F.2d 553, 571-73, Cert. denied, 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978) (Wilkey, J., dissenting) (saving clause preserved district court jurisdiction where agency record is insufficient for court of appeals review under "substantial evidence" standard)
 
 
 [19]
 47 U.S.C. § 402(b)(6) (1976). Judge Gasch raised in a footnote, Memorandum Decision at 3, J.A. at 127, his concern that appellants were not "aggrieved" within the meaning of § 402(b) inasmuch as their environmental concerns were unrelated to broadcasting, a proposition which he derived from our decision in Office of Communications of United Church of Christ v. FCC, 123 U.S.App.D.C. 328, 335-337, 359 F.2d 994, 1001-03 (1966). However, since the courts of appeals under § 402(a) have exclusive jurisdiction to review any FCC orders other than those appealable under § 402(b), See 28 U.S.C. § 2342 (1976), Judge Gasch found it unnecessary to reach the question. Of course the question is technically avoidable, but lest we be too economical, we will say that we see no reason to read the word "aggrieved" so narrowly in § 402(b) and we think our United Church of Christ decision is not to the contrary
 
 
 [20]
 49 U.S.C. § 1486(a) (1976)
 
 
 [21]
 See pp. --- of 195 U.S.App.D.C., pp. 934-935 of 603 F.2d, Infra
 
 
 [22]
 See note 25 Infra; Indep. Cosmetic Mfrs., 187 U.S.App.D.C. at 365-66, 574 F.2d at 576-77 (Wilkey, J., dissenting) (district court has jurisdiction to review final agency action where agency record is not susceptible to review under substantial evidence standard)
 
 
 [23]
 See Brief of Appellants at 18-19
 
 
 [24]
 Apparently appellant ALPA thought so too at one time, for it successfully maintained the contrary position in the 5th Circuit in 1971. See Air Line Pilots Association, Int. v. Department of Transportation, 446 F.2d 236, 240-42 (5th Cir. 1971)
 
 
 [25]
 Administrative Procedure Act § 2(d), 5 U.S.C. § 551(6) (1976)
 
 
 [26]
 For example, were the agency records inadequate to permit review directly in the court of appeals, we would be inclined to find that the action, although final and reviewable for purposes of the APA, was not an "order" within the meaning of the special review statute. See Indep. Cosmetic Mfrs., 187 U.S.App.D.C. at 365-66, 574 F.2d at 576-77 (Wilkey, J., dissenting); Deutsche Lufthansa Aktiengesellschaft v. CAB, 156 U.S.App.D.C. 191, 195, 479 F.2d 912, 916 (1973) ("It is the availability of a record for review and not the holding of a quasi judicial hearing which is now the jurisdictional touchstone.") On the other hand, courts sometimes have construed "order" for purposes of special review statutes more expansively than its definition in the APA, notably to permit direct review of regulations promulgated through informal notice-and-comment rulemaking. See, e.g., Investment Co. Inst. v. Board of Governors of the Federal Reserve Sys., 179 U.S.App.D.C. 311, 319, 551 F.2d 1270, 1278 (1977); Deutsche Lufthansa Aktiengesellschaft v. CAB, supra; Indep. Comsetic Mfrs., 187 U.S.App.D.C. at 360, 574 F.2d at 570 (Wilkey, J., dissenting)
 
 
 [27]
 The 5th Circuit, concluding that the FAA's "no hazard" determinations were "orders" within § 1006, surveyed the obvious collateral effects which such determinations have. Air Line Pilots Association, 446 F.2d at 241. Moreover, it is clear from this proceeding that the FAA's ruling directly affects the proceedings before other agencies. The FCC, as is its practice, relied on the "no hazard" determination in reviewing Malrite's application for a construction permit. See Memorandum Decision at 1, J.A. at 125. Cf. State of Florida, 29 Pike & Fischer Radio Reg.2d 511, FCC 74-104 (1974) (FCC will rely on FAA's expertise in air-hazard matters in absence of substantial evidence to the contrary)
 
 
 [28]
 144 U.S.App.D.C. 29, 444 F.2d 904 (1971)
 
 
 [29]
 49 U.S.C. § 1482(a) (1976). Section 1002 provides that "(a)ny person may file . . . a complaint . . . with respect to anything done or omitted to be done by any person in contravention of any provisions of (the Act)."
 
 
 [30]
 International Navigators Council, 144 U.S.App.D.C. at 35, 444 F.2d at 910
 
 
 [31]
 See Brief of Appellants at 18
 
 
 [32]
 The nature of the unlawful acts alleged may affect jurisdiction in some circumstances not presented by this case. For example, where an agency is alleged to be acting Ultra vires, judicial review occasionally may be had at once, even though the Ultra vires actions themselves would eventuate in an appealable order. See Indep. Cosmetics Mfrs., 187 U.S.App.D.C. at 342, 574 F.2d at 555; Nader v. Volpe, 151 U.S.App.D.C. 90, 95 and n. 30, 466 F.2d 261, 266 and n. 30 (1972) (citing cases). If in such cases there is a statute providing review in the court of appeals, it may or may not be construed to permit review of such interlocutory matters. If not, jurisdiction to review would lie in district court. See L. Jaffe, Judicial Control of Administrative Action 358 (1965)
 
 
 [33]
 City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 336, 78 S.Ct. 1209, 1218, 2 L.Ed.2d 1345 (1958)
 
 
 [34]
 See notes 37 through 39 Infra
 
 
 [35]
 Id
 
 
 [36]
 64 App.D.C. 379, 78 F.2d 729, Cert. denied, 296 U.S. 624, 56 S.Ct. 147, 80 L.Ed. 443 (1935)
 
 
 [37]
 Id., 64 App.D.C. at 382, 78 F.2d at 732. Jenny Wren itself followed earlier cases similarly construing the predecessor of § 402(b), § 16 of the Radio Act of 1927, 44 Stat. 1166. E. g., White v. Federal Radio Commission, 29 F.2d 113, 115 (N.D.Ill.1928)
 
 
 [38]
 See, e.g., Rippe v. FCC, 528 F.2d 771, 772 (6th Cir. 1976); Citizens Committee to Save WEFM v. FCC, 165 U.S.App.D.C. 185, 208, 506 F.2d 246, 269 (1974); Valley Vision, Inc. v. FCC, 399 F.2d 511, 514 (9th Cir. 1968); Cook v. United States, 394 F.2d 84, 86 (7th Cir. 1968)
 
 
 [39]
 See, e. g., Kent v. Pan American World Airways, 200 Misc. 101, 101 N.Y.S.2d 927 (1950)
 
 
 [40]
 See Aircraft Owners & Pilots Assoc. v. Bond, No. 77-1643 (D.D.C. 18 Oct. 1977) (memorandum decision); See also Robinson v. Dow, 522 F.2d 855, 858 (6th Cir. 1975); Carey v. O'Donnell, 165 U.S.App.D.C. 46, 49, 506 F.2d 107, 110 (1974); Oling v. Air Line Pilots Ass'n, 346 F.2d 270 (7th Cir.), Cert. denied, 382 U.S. 926, 86 S.Ct. 313, 15 L.Ed.2d 339 (1965)
 
 
 [41]
 49 U.S.C. § 1486(d) (1976)
 
 
 [42]
 City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 336, 78 S.Ct. 1209, 1218, 2 L.Ed.2d 1345 (1958)
 
 
 [43]
 See 47 U.S.C. § 402(c) (1976); 49 U.S.C. § 1486(a) (1976)
 
 
 [44]
 See Indep. Cosmetic Mfrs., 187 U.S.App.D.C. at 343, 574 F.2d at 556
 
 
 [45]
 Administrative Procedure Act § 10(b), 5 U.S.C. § 703 (1976)
 
 
 [46]
 Investment Co. Inst., 179 U.S.App.D.C. at 320-321, 551 F.2d at 1279-80; See also Indep. Cosmetic Mfrs., 187 U.S.App.D.C. at 342 and n. 2, 574 F.2d at 555 and n. 2 (citing cases); Note, 88 Harv.L.Rev. 980, 982 (1975)
 
 
 [47]
 Compare United Gas Pipeline Co. v. FPC, 86 U.S.App.D.C. 314, 316, 181 F.2d 796, 798, Cert. denied, 340 U.S. 827, 71 S.Ct. 63, 95 L.Ed. 607 (1950) (use of "order" within § 19(b) of the Natural Gas Act contemplates "review of a decision based on evidence presented in a quasi-judicial proceeding before the Commission") And, Arrow Airways, Inc. v. CAB, 87 App.D.C. 71, 182 F.2d 705, Cert. denied, 340 U.S. 828, 71 S.Ct. 65, 95 L.Ed. 608 (1950) (construing 49 U.S.C. § 646), With Deutsche Lufthansa Aktiengesellschaft v. CAB, 156 U.S.App.D.C. at 195, 479 F.2d at 916 ("(i)t is the availability of a record for review and not the holding of a quasi judicial hearing which is now the jurisdictional touchstone") And, Investment Co. Inst. v. Board of Governors, 179 U.S.AppD.C. at 317-18, 551 F.2d at 1276-78
 
 
 [48]
 See Nader v. Volpe, 151 U.S.App.D.C. at 95 and nn. 30 & 31, 466 F.2d at 266 and nn. 30 & 31 (citing cases); L. Jaffe, Judicial Control of Administrative Action 358 (1965)
 
 
 [49]
 See, e.g., Environmental Defense Fund v. U. S. Department of Transportation, 6 E.L.R. 20581 (D.C. Cir. 19 May 1976), Cert. denied, 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed.2d 328 (1976); Washington Utilities & Transp. Comm'n v. FCC, 513 F.2d 1142, 1167-68 (9th Cir.), Cert. denied, 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975)
 
 
 [50]
 See Atlanta Gaslight Co. v. Natural Gas Co., 338 F.Supp. 1039, 1050 (N.D.Ga.1972)
 
 
 [51]
 In Nader v. Butterfield, 373 F.Supp. 1175 (D.D.C.1974), cited by appellants, the question of subject-matter jurisdiction was not raised. Had it been, there would have been a close question whether the action challenged, an internal memorandum prescribing the standards for x-ray inspection equipment, was an "order" for purposes of § 1006 of the Aviation Act. In any case, insofar as the memorandum may fairly have constituted an "order" within § 1006, the District Court should have inquired into its own jurisdiction Sua sponte and dismissed. In State of Illinois v. Butterfield, 396 F.Supp. 632 (N.D.Ill.1975), also relied on by appellants, there was apparently no particular final agency action affording review within § 1006. The district court therefore correctly declined to dismiss, discerning "no formal steps as yet untaken by plaintiffs . . . the result of which would produce an agency order subject to judicial review." Id. at 638. Appellants' citation, understandable in one sense, of City of Rochester v. United States Postal Service, 541 F.2d 967 (2nd Cir. 1976), is inapposite. United States district courts have original jurisdiction over all actions brought by or against the Postal Service. 39 U.S.C. § 409(a) (1976). Similarly, City of New York v. United States, 337 F.Supp. 150 (E.D.N.Y.1972), is wide of the mark. In that case the court reviewing allegations that an ICC order violated NEPA was a three-judge district court convened in accordance with another special review statute. 28 U.S.C. § 2321 (1976). Beside the point also are cases cited by appellants wherein district courts exercised jurisdiction under one or another of the special federal question jurisdictional statutes. E.g., 28 U.S.C. § 1361 (1976) (Mandamus Act); 28 U.S.C. § 1337 (1976) (suits arising under acts regulating commerce). Appellants seem in general to have misunderstood the question before us. We are unconcerned with the jurisdiction of the district courts apart from the effect on that jurisdiction of the special review statutes at issue here. See Environmental Defense Fund v. Hardin, 138 U.S.App.D.C. 391, 396-97 and n. 24, 428 F.2d 1093, 1098-99 and n. 24 (1970)
 
 
 [52]
 47 U.S.C. § 309(a) (1976)
 
 
 [53]
 See, e.g., National Organization for Women v. FCC, 181 U.S.App.D.C. 65, 80, 555 F.2d 1002, 1017 (1977) (in determining whether broadcast license renewal would serve the public interest FCC obliged to consider licensee's equal employment performance). However, "the use of the words 'public interest' in a regulatory statute is not a broad license to promote the general public welfare," and these "words take meaning from the purposes of the regulatory legislation." NAACP v. FPC, 425 U.S. 662, 669, 96 S.Ct. 1806, 1811, 48 L.Ed.2d 284 (1976)
 
 
 [54]
 165 U.S.App.D.C. 46, 49, 506 F.2d 107, 110, Cert. denied, 419 U.S. 1110, 95 S.Ct. 783, 42 L.Ed.2d 806 (1975)
 
 
 [55]
 Accord, Kesinger v. Universal Airlines, Inc., 474 F.2d 1127 (6th Cir. 1973); Oling v. Airline Pilots Ass'n, 346 F.2d 270 (7th Cir. 1965), Cert. denied, 382 U.S. 926, 86 S.Ct. 313, 15 L.Ed.2d 339 (1965)
 
 
 [56]
 Environmental Defense Fund v. Environmental Protection Agency, 158 U.S.App.D.C. 1, 3-4, 485 F.2d 780, 782-83 (1973)
 
 
 [57]
 See Frito Lay, Inc. v. FTC, 380 F.2d 8, 10 (5th Cir. 1967)
 
 
 [58]
 Administrative Procedure Act § 10(c), 5 U.S.C.A. § 704 (1976)
 
 
 [59]
 See, e.g., Tiger Intern., Inc. v. CAB, 554 F.2d 926 (9th Cir.), Cert. denied, 434 U.S. 975, 98 S.Ct. 532, 54 L.Ed.2d 467 (1977); Columbus Broadcasting Coalition v. FCC, 164 U.S.App.D.C. 213, 505 F.2d 320 (1974); Green v. FCC, 144 U.S.App.D.C. 353, 447 F.2d 323 (1971); Neckritz v. FCC, 446 F.2d 501, 503 (9th Cir. 1971)
 
 
 [60]
 47 U.S.C. § 405 (1976). Of course, " 'section 405 is not inflexible; it leaves room for the operation of sound judicial discretion to determine whether and to what extent judicial review of questions not raised before the agency should be denied.' " Great Falls Community TV Cable Co. v. FCC, 416 F.2d 238, 239 (9th Cir. 1969); The Way of Life Television Network, Inc. v. FCC, No. 78-1038, 193 U.S.App.D.C. 202, 593 F.2d 1356 (1979)
 
 
 [61]
 See Investment Company Institute, 179 U.S.App.D.C. at 323, 551 F.2d at 1282. The agency might, for example, find a petition for reconsideration untimely. See, e.g., 47 U.S.C. § 405 (1976) (petition for rehearing must be filed within thirty days from date upon which public notice of the order is given). However, if the untimeliness is excusable, it may be an abuse of discretion to reject the petition. See Gardner v. FCC, 174 U.S.App.D.C. 234, 530 F.2d 1086 (1976)
 
 
 [62]
 This approach is quite like that prescribed by statute in the case of certain other agency orders, including those made reviewable by § 402(a) of the Communications Act. See 28 U.S.C. § 2347 (1976)
 
 
 [63]
 See Brief of FAA and FCC at 36-37; City of Rochester v. U. S. Postal Service, 541 F.2d 967, 976-77 (2nd Cir. 1976)
 
 
 [64]
 See Federal Aviation Act § 1006, 49 U.S.C. § 1486(a) (1976) ("After the expiration of said sixty days a petition may be filed only by leave of court upon a showing of reasonable grounds for failure to file the petition theretofore.") Appellees recognize this, at least with respect to the Aviation Act. Brief of FAA and FCC at 23. Moreover, we were told by counsel for the appellees at oral argument that the existing administrative record is adequate to afford review of appellants' allegations on their merits. That being the case, we will not ask appellants to petition the FCC for reconsideration solely for the purpose of obtaining another final order from which a timely appeal might be taken under § 402(b). In the future, however, such a petition will ordinarily be the appropriate course