**CHIRON CORPORATION and PerSeptive Biosystems, Inc., Plaintiffs,**

v.

**UNITED STATES NATIONAL TRANSPORTATION SAFETY BOARD and James E. Hall, and Daniel D. Campbell, and Thomas Conroy, Defendants.**

Civil Action No. 98–1158 (RMU).
Doc. Nos. 1, 8, 13, 14 and 16.

United States District Court,
District of Columbia.

Dec. 2, 1998.

---

Richard S. Odom, Brobeck, Phleger & Harrison, LLP, Los Angeles, CA, for Plaintiff Chiron Corp.

Jerry W. Cox, Sean T. Connaughton, Timi E. Nickerson, Eckert Seamans Cherin & Mellott, LLC, Washington, DC, for Plaintiff PerSeptive Biosystems, Inc.

Stacy M. Ludwig, U.S. Attorney's Office, Washington, DC, for Defendants.

Denise M. D'Avella, Office of General Counsel, National Transportation Safety Board, Washington, DC, of Counsel to U.S. Attorney.

*MEMORANDUM OPINION*

URBINA, District Judge.

## TRANSFERRING THE MATTER TO THE DISTRICT OF COLUMBIA CIRCUIT

### I. INTRODUCTION [1]

Plaintiffs Chiron Corporation ("Chiron") and PerSeptive Biosystems, Inc. ("PerSeptive") brought this action against Defendants United States National Transportation Safety Board ("NTSB" or the "Board"), and in their official capacity the Board's Chairman, its General Counsel, and an employee appointed Investigator in Charge. Chiron and PerSeptive seek judicial review of NTSB's denial of their request for access to information relating to the Board's investigation of a fire that destroyed an aircraft operated by Federal Express Corporation ("FedEx") as Flight 1406. The defendants moved to dismiss the suit on the ground that this court lacks jurisdiction over the matter by virtue of a provision of the Independent Safety Board Act, which grants exclusive jurisdiction of NTSB matters to the United States Courts of Appeals.

During the pendency of the suit, Chiron and PerSeptive filed a motion for a temporary restraining order and a preliminary injunction. In this motion Chiron and PerSeptive requested that the court order the Board to not dispossess itself of any communication, documentation, information, or tangible thing in its custody concerning its investigation of FedEx Flight 1406 and its cargo. Chiron and PerSeptive additionally requested that this court order the Board to describe and identify the location of any of these items currently in the NTSB's possession or returned to FedEx or any other non-party.

Upon review of the pleadings and relevant case law, the court concludes the Courts of Appeals have exclusive jurisdiction to review NTSB matters relating to its investigation of Flight 1406. Accordingly, this court cannot hear the merits of the suit. In the interest

---

**1.** For the reasons set forth in this Memorandum Opinion, the court issued a separate Fed.R.Civ.P. 58 Order on November 22, 1998, transferring the matter to the United States Court of Appeals for the District of Columbia Circuit.

of justice the court transfers the matter to the District of Columbia Circuit, pursuant to 28 U.S.C. § 1631 and 49 U.S.C. § 1153. Because this court lacks jurisdiction, this court will not decide the motion for a temporary restraining order and a preliminary injunction.

## II. BACKGROUND

On September 5, 1996, while in flight, a fire occurred onboard FedEx Flight 1406, a DC–10 aircraft. (Pls.' Am. Compl. ¶ 14.) The aircraft landed at Stewart International Airport in Newburgh, New York, and despite fire suppression efforts of emergency response crews, the fire consumed the aircraft. (*Id.*) Pursuant to its statutory authority, NTSB began an investigation of the destruction of the DC–10 aircraft. (*Id.;* Defs.' Mem. in Supp. of Mot. to Dismiss at 1.)

In the course of its investigation, NTSB appointed FedEx, Chiron, and PerSeptive as "parties" to the Flight 1406 investigation. (Pls.' Am. Compl. ¶ 16.) In March 1997 the Board's Chairman testified before Congress that a cargo container holding a DNA synthesizer constituted the probable source of the smoke and fire that destroyed the plane. (Pls.' Am. Compl. ¶ 17.) Chiron owned the DNA synthesizer, and PerSeptive manufactured it. (Pls.' Am. Compl. ¶ 15.)

During the investigation NTSB collected various items of wreckage and information, including twenty-three cargo containers from the main cabin and thirteen containers from the lower cabin, (Pls.' Am. Compl. ¶ 18), and the cargo shipping manifest, (*id.* at ¶ 21). On at least ten separate occasions, between October 1996 and April 1998, Chiron or PerSeptive made requests to the Board for access to the cargo shipping manifest and other unspecified cargo information. (Pls.' Am. Compl. ¶ 21.) The Board never complied with the request. (*Id.*)

On October 7, 1997, and January 28, 1998, Chiron and PerSeptive, respectively, filed petitions with NTSB requesting the release to the parties of the cargo manifest, insurance claims and any other information revealing the contents of each cargo container on Flight 1406. (Pls.' Am. Compl. ¶¶ 22, 24.) NTSB denied the petitions on the bases that

FedEx had termed such information "sensitive commercial information" subject to the Trade Secrets Act and because FedEx had objected to its release. (Pls.' Am. Compl. ¶¶ 23, 26.)

Chiron and PerSeptive filed a three-count complaint with this court on May 7, 1998, amended on May 11, 1998, seeking review of NTSB's denial of their request for access to information. Chiron and PerSeptive request that the court (1) set aside NTSB's decisions to withhold information from them; (2) enjoin NTSB from withholding the cargo information and order NTSB to reveal the information to the plaintiffs; (3) compel NTSB to disseminate all information concerning the investigation to all parties to the investigation; (4) exercise mandamus authority to compel NTSB to require all persons with information concerning the investigation to submit such information; (5) reimburse Chiron and PerSeptive for all costs, expenses, and attorneys fees; (6) issue a special finding that the circumstances raise questions of whether agency personnel acted in an arbitrary and capricious manner, so that special counsel will initiate a proceeding to determine whether disciplinary action is warranted; and (7) grant any other appropriate relief. (Pls.' Am. Compl. ¶¶ 48–54.)

Chiron and PerSeptive assert that this court has jurisdiction pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"); the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.;* the federal question statute, 28 U.S.C. § 1331; the mandamus statute, 28 U.S.C. § 1361; and 49 U.S.C. §§ 1131, 1132, 1134 of the Independent Safety Board Act of 1974 ("ISBA.")

## III. DISCUSSION

### A. Judicial Review of an NTSB Investigation

■ The District of Columbia Circuit has not previously ruled on whether 49 U.S.C. § 1153 places exclusive jurisdiction for judicial review of NTSB aviation matters in the United States Courts of Appeals. In *City of Rochester v. Bond,* 603 F.2d 927 (D.C.Cir. 1979), however, the District of Columbia Circuit examined whether a similar statute pro-

vided district courts with subject-matter jurisdiction over controversies with the Federal Aviation Administration ("FAA"). In that case the D.C. Circuit held that if Congress specifies judicial review may be had in a particular court, then Congress ordinarily intends that that court have exclusive jurisdiction. *Id.* at 931. If "there exists a special statutory review procedure, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." 603 F.2d at 931.

The D.C. Circuit also examined the issue in the companion cases of *Telecommunications Research and Action Ctr. v. Federal Communications Comm'n*, 750 F.2d 70 (D.C.Cir.1984) and *Air Line Pilots Ass'n v. Civil Aeronautics Bd.*, 750 F.2d 81 (D.C.Cir. 1984). In those cases, the D.C. Circuit concluded that when a statute commits final agency action to review by the United States Courts of Appeals, the appellate court has exclusive jurisdiction to hear suits seeking relief that might affect its future statutory power of review. 750 F.2d at 72.

Additionally, the court in *Telecommunications Research and Action Center* and *Air Line Pilots Ass'n v. Civil Aeronautics Bd.* held that in the case of a special review statute neither 28 U.S.C. § 1331 nor 28 U.S.C. § 1361 provides jurisdiction to district courts. 750 F.2d at 77.

> By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power. It would be anomalous to hold that this grant of authority only strips the District Court of general federal question jurisdiction under 28 U.S.C. § 1331 (1982) when the Circuit Court has present jurisdiction under a special review statute, but not when the Circuit Court has immediate jurisdiction under the All Writs Act in aid of its future statutory review power.

*Id.* at 77. Furthermore,

> "[t]he mandamus statute, 28 U.S.C. § 1361 also fails to confer jurisdiction on the District Court to compel agency action. Mandamus is an extraordinary remedy that is not available when review by other means is possible. . . . Because review is available in the Court of Appeals under the special review statute . . ., action by the District Court under section 1361 is not."

*Id.* at 77–78.

Moreover, the D.C. Circuit in *Telecommunications Research and Action Center* and *Air Line Pilots Ass'n v. Civil Aeronautics Bd.* held that the APA does not provide jurisdictional authority for district courts. "Nor is district court review permissible here under section 703 of the APA, which provides for district court review when statutory review is inadequate. Where statutory review is available in the Court of Appeals it will rarely be inadequate." *Id.* at 78 (footnote omitted). Additionally, the D.C. Circuit pointed to "compelling policy reasons" for exclusive jurisdiction, including the appellate courts' development of an expertise concerning the agencies assigned to them for review and elimination of duplicative and potentially conflicting review. *Id.* at 78.

Because of their similarities with the instant case, the rationale behind these cases applies to the issue presented here. For instance, in the D.C. Circuit cases as in the instant case, Congress enacted a statute that grants judicial review to the United States Courts of Appeals but remains silent on whether concurrent jurisdiction exists in district courts. Applying the rationale of the D.C. Circuit in *City of Rochester, Telecommunications Research and Action Center* and *Air Line Pilots Ass'n v. Civil Aeronautics Bd.*, the court concludes that the United States Courts of Appeals have exclusive jurisdiction to hear Chiron's and PerSeptive's claim involving NTSB's decision not to share information obtained during its investigation of FedEx Flight 1406.

Only one District of Columbia District Court case, *Seminole Pipeline Co. v. Vogt*, 794 F.Supp. 438 (D.D.C.1992), has examined the issue of jurisdiction for judicial review of an NTSB order. In that case, the plaintiff sought an emergency order enjoining NTSB from holding a hearing in conjunction with a fact-finding investigation of a pipeline accident that killed three people. 794 F.Supp. at

439. Similar to what occurred in the instant case, the plaintiff sought the injunction on the ground that NTSB arbitrarily and capriciously denied its request for a continuance. *Id.* In *Seminole Pipeline,* the court ruled that 49 U.S.C. § 1903 (the ISBA predecessor to 49 U.S.C. § 1153) "vests exclusive jurisdiction in the Court of Appeals over all 'orders' issued by NTSB." 794 F.Supp. at 440.

The facts of *Seminole Pipeline* come very close to the facts of the instant case. Both cases involve challenges to NTSB decisions relating to the manner in which the Board carries out its investigative authority. Both cases also involve allegations that NTSB acted arbitrarily and capriciously in exercising its authority. Both cases involve an NTSB order. Lastly, both cases involve an interpretation of whether jurisdiction for judicial review rests exclusively in the United States Courts of Appeals or concurrently with the district courts.

Other circuits examining the issue have concluded, however, that district courts do have subject matter jurisdiction. For example, in *Thomas Brooks Chartered v. Burnett,* 920 F.2d 634, 636 (10th Cir.1990), the Tenth Circuit ruled jurisdiction existed under the APA, 5 U.S.C. § 701(a)(1)-(2), for a district court's jurisdiction to review an order of the NTSB. Similarly, in *Mace v. Skinner,* 34 F.3d 854, 856 (9th Cir.1994), a case relied upon by Chiron and PerSeptive to establish jurisdiction, the Ninth Circuit vacated a district court's order of dismissal and remanded for further proceedings. Rather than involving an NTSB accident investigation, however, *Mace v. Skinner* involved the review by an NTSB administrative law judge of the FAA's revocation of an aircraft mechanic's certificate. 34 F.3d at 856. Additionally, *Redman v. Federal Aviation Admin.,* 759 F.Supp. 1384 (D.Minn.1991), which Chiron and PerSeptive also rely upon, involved a district court's jurisdiction to interpret an administrative law judge's order upholding FAA suspension of an airline transport pilot certificate.

An examination of the case law in this circuit leads to the conclusion that when Congress vests judicial review authority in the United States Courts of Appeals, and remains silent as to concurrent jurisdiction, district courts lack subject matter jurisdiction. While the D.C. Circuit has not specifically spoken to this question in the context of an NTSB order made in the course of an aircraft investigation, the D.C. Circuit's guidance seems clear: "By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power." *Telecommunications Research and Action Center,* 750 F.2d at 77.

Additionally, this court cannot use the FOIA as a basis for assuming jurisdiction of Chiron's and PerSeptive's claims. In this respect, the NTSB apparently treated both Chiron's and PerSeptive's petitions as requests for public disclosure. (Pls.' Am. Compl. ¶ 30.) However, neither Chiron nor PerSeptive made a FOIA request for the documents, and both plaintiffs state the Act does not apply here. (*Id.* at ¶ 31.) Moreover, the FOIA specifically provides for an administrative appeal process following an agency's denial of a FOIA request, 5 U.S.C. § 552(a)(6)(A)(i), (ii), and courts have consistently held that the FOIA requires exhaustion of this appeal process before an individual may seek relief in the courts. *Oglesby v. United States Dep't of the Army,* 920 F.2d 57, 61–62 (D.C.Cir.1990). Chiron and PerSeptive have made no attempt to even engage in the agency appeal process.

Accordingly, the court concludes that the United States Courts of Appeals have exclusive jurisdiction to hear Plaintiffs Chiron and PerSeptive's claims that NTSB denied their request for access to information relating to FedEx Flight 1406.

**B. Transfer of the Matter to the Court of Appeals**

In the last paragraph of their opposition, Chiron and PerSeptive request the court transfer the matter to the District of Columbia Circuit should this court find it does not have subject matter jurisdiction. (Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss at 12.) "Defendants concede that this case could have been properly brought in the

Court of Appeals for the D.C. Circuit at the time it was filed in this Court. Accordingly, if *arguendo*, this Court finds itself without subject matter jurisdiction, it should transfer this case to the Court of Appeals." *Id.* at 11–12.

In *Telecommunications Research and Action Center* and *Air Line Pilots Ass'n v. Civil Aeronautics Bd.* the D.C. Circuit recommended transfer because prior circuit precedent may have implied that the district court had concurrent jurisdiction over claims concerning non-final agency action, and a number of claims had been filed in district court. 750 F.2d at 79 n. 37. In this respect, the court noted that it would serve no useful purpose to force the plaintiff to start over. 750 F.2d at 84. Accordingly, the D.C. Circuit concluded it in the interest of justice to proceed on the merits of the case as though it originally had been brought in that court. *Id.* at 85. Similarly, in *Seminole Pipeline*, this court transferred the action to the D.C. Circuit pursuant to 28 U.S.C. § 1631 and 49 U.S.C. § 1903(d) (the predecessor to 49 U.S.C. § 1153). 794 F.Supp. at 439–40.

For these reasons above-stated, the court concludes it would serve the interest of justice to transfer the case to the United States Court of Appeal for the District of Columbia Circuit.

## IV. CONCLUSION

For the reasons stated in this memorandum opinion, the court concludes that jurisdiction to challenge NTSB's determination regarding the sharing of information obtained in the investigation of FedEx Flight 1406 rests exclusively with the United States Courts of Appeals. The court further concludes that it would serve the interest of justice to transfer the case to the D.C. Circuit.