718 F.2d 649
 COUNTY OF HALIFAX, VIRGINIA, acting By and Through the BOARD
OF SUPERVISORS, its governing body, a Political Subdivision
of the Commonwealth of Virginia, Halifax, Virginia;
Synergics, Inc., a Maryland Corporation having its principal
place of business in Annapolis, Maryland, Appellees,
v.
Kenneth LEVER, c/o Actaeon Corporation; Banister
Development, Ltd., c/o Actaeon Corporation, Appellants.
 No. 82-2012.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 6, 1983.
Decided Sept. 29, 1983.
Rehearing and Rehearing En Banc Denied Nov. 2, 1983.
 
 Joseph M. Winston, Jr., Danville, Va. (Luis A. Abreu, Clement & Wheatley, Danville, Va., on brief), for appellants.
 Thomas J. Wood, William W. Bennett, Jr., South Boston, Va. (Slayton, Bennett & Rand, South Boston, Va., on brief), for appellees.
 Before RUSSELL and WIDENER, Circuit Judges, and BRYAN, Senior Circuit Judge.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 The plaintiffs/appellees, County of Halifax, Virginia, and Synergics, Inc. filed this action in district court against Kenneth Lever and Banister Development, Ltd., defendants/appellants, asserting diversity jurisdiction and seeking by way of relief only "a mandatory injunction ... against defendants requiring [the defendants] to withdraw and relinquish all their rights obtained under the permit dated July 7, 1981, for the Banister Dam, Halifax County, Virginia, United States of America, Federal Energy Regulatory Commission, Project No. 3610-000, effective immediately; and further, to restrain and enjoin defendants from applying or filing with the Federal Energy Regulatory Commission any other permits, licenses or exemption applications for the Banister Dam, Halifax, Virginia; ...." The defendants moved to dismiss the action for lack of subject matter jurisdiction because the controversy was in effect one to invalidate a permit issued by the Federal Energy Regulatory Commission [FERC] under the Federal Power Act[1] and to overturn the decision of FERC not to rescind that permit. Such a proceeding, they contend, was within the exclusive jurisdiction of the FERC. Assuming that the proceedings were within the exclusive jurisdiction of the FERC, the defendants argued in their motion that the plaintiffs had not exhausted their administrative remedies before said Commission under the Act by filing a petition for rehearing within thirty (30) days after the issuance of the challenged order of permit nor had they within the required time petitioned for review of the order of the Commission refusing to invalidate the temporary permit to an appropriate United States Court of Appeals which had the exclusive jurisdiction "to affirm, modify, or set aside" the Commission's order of permit.[2] The District Court denied the motion to dismiss. Its ground for such denial was that plaintiffs' action was one in tort for fraud and deceit and as such did not arise under the Federal Power Act. It relied on the decision in Montana-Dakota Utilities Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951), as authority for this ruling. The cause thereafter, with issues joined, proceeded to trial before the District Court and resulted in an order and decree "requiring Defendant to surrender his permit [to produce hydroelectric power at a dam on Banister River in Halifax County, Virginia] to FERC and [to] take no further action on said permit." The defendants have appealed. We reverse.
 
 
 2
 The threshold question which must first be answered in this appeal is the jurisdiction or power of the District Court. The resolution of that issue depends on the inherent nature and character of plaintiffs' action, an issue which requires some review of the record. The plaintiffs in their complaint have not sued in tort for damages sustained as a result of fraud and deceit; they sue in essence, to hold and set aside, by way of a mandatory injunction in the District Court, a temporary permit issued the defendants, after a properly noticed hearing, by the FERC under the Federal Power Act. That permit, which is the real subject of this action, was issued pursuant to an application filed by the defendants with the FERC for a temporary permit to develop a dam to generate hydroelectric energy at Banister Dam in Halifax County under Section 797(e), 16 U.S.C. of the Federal Power Act. The FERC gave notice of this filing to "any States or municipality likely to be interested in or affected by such application," which included Halifax County. It also published "notice of such application once each week for four weeks in a daily or weekly newspaper published" in Halifax County where the lands affected by the project were located as required in Sec. 797(f), 16 U.S.C. In addition, the notices as given stated specifically that "notices of intent to file competing applications had to be submitted to the Commission by April 6, 1981" and "that parties filing notices of intent had to submit [their] competing applications by June 5, 1981." The notice further stated that any "comments, protests, or petitions to intervene must be received on or before April 6, 1981."
 
 
 3
 On March 19, 1981, the plaintiff Halifax County filed a notice of intent to file an application for a preliminary permit prior to the April 6 deadline under the provisions of the Commission's regulation 18 CFR, Sec. 4.33(f) and (c), 1980, but it thereafter submitted no competing application by June 5, 1981, or by any later date. On July 2, 1981, however, after time for filing either a competing application or other type of application had expired, Halifax County filed a notice of intent to file an application for exemption from licensing. While such notice of the County was pending, the Director, Office of Electric Power Regulation in the FERC, ("Director") issued the preliminary permit to the defendants on July 7, 1981. Thereafter he "rejected as late the Halifax notice of intent for exemption." On July 16 and 22, 1981, the plaintiffs filed appeals from the orders of the Director. The FERC issued on August 17, 1981, a notice of intent to act on the appeals and suspended the effective date of the preliminary permit pending Commission action on the appeals. After receiving arguments from the parties, on October 8, 1981, the FERC issued its order denying the appeals of the plaintiffs. In its order it gave very definite reasons for such denial. The plaintiffs did not petition the Commission for rehearing but filed this action in the District Court seeking, in effect, the same relief they had sought of the Commission.
 
 
 4
 In its appeal as filed on July 22, 1981, Halifax County raised a number of claims of defects in the FERC proceedings. The first was directed at the scope and effect of its notice of intent to file a competing application as submitted to the FERC on March 19, 1981. According to plaintiff's argument, as set forth in its statement of grounds of appeal, such notice was "intended to protect fully [the County's] rights and options regarding the Banister Dam" and "was not intended to confine the [County's] options to the filing of an application for a preliminary permit or to preclude the filing of an exemption application."[3] Moreover, on July 2, 1981 (which, incidentally, was almost three months after the final date for filing a notice of intent to file a competing application and a month after the notice of the Commission required that a competing application be filed), the County asserts that it "reaffirm[ed] its intent to file a competing exemption application," but, without replying to such notice of intent the "FERC issued a preliminary permit" to the defendants.
 
 
 5
 The County, also, in its appeal invoked the authority of the Commission to "cancel a permit for other good cause shown, after notice and opportunity for hearing." 18 C.F.R. Sec. 4.83. It identified particularly as "good cause" for the cancellation that the defendants had "promised" the County that, its "permit application would be withdrawn if [it] was not the successful bidder on the Banister Dam," that it was not the successful bidder but that the defendants had "refused to honor this commitment," thereby "substantially jeopardiz[ing] [the County's] ability to allow the successful bidder to develop the Banister Dam."[4] It added that, unless granted a cancellation of defendants' permit, the County "will be unable to work with its developer of preference and will be compelled to work with a developer whose prior dealings with [it] can only be characterized as being in bad faith." The plaintiffs' final ground for cancellation was that it had been misled by members of the Commission's staff, with whom it had consulted, as to the scope and effect of its notice of intent to file a competing application.
 
 
 6
 From this review of the record, there can be no question about the nature and character of plaintiffs' proceedings in the District Court. It is not an action to recover damages for fraud or deceit; the plaintiffs do not even ask for damages. What they are asking the District Court to do is to grant them by way of relief in this proceeding in the District Court, in a somewhat left-handed way, exactly what it sought and was denied by the Commission in the administrative proceeding before it to which proceeding the County had been a party. After having unsuccessfully invoked the jurisdiction of the Commission to obtain that relief, the County now argues that the power to revoke the temporary permit issued by the Commission did not exist in the Commission and that the District Court has the power to provide it with relief by way of an improvised invalidation of the temporary permit granted the defendants.
 
 
 7
 We are unable to follow the County's reasoning. The plaintiffs have pursued the wrong road for the relief they seek. The Federal Power Act, "written in words of plain meaning," has committed to the Commission the exclusive right to grant, cancel, or rescind permits for the construction or operation of dams or reservoirs "necessary or appropriate" "for the development ... of [electric] power across, along, from, or in any of the streams or other bodies of water over which Congress has jurisdiction" under the commerce clause. 16 U.S.C. Sec. 797(e). In exercising that authority, the Commission is expressly empowered "to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate", including "the form or forms of all statements, declarations, applications, and reports to be filed with the Commission, the information which they shall contain, and the time within which they shall be filed." Sec. 825h, 16 U.S.C. This authority clearly covers the grant of the relief the plaintiffs sought in the administrative proceedings before the Commission. The power to rescind or cancel an order or permit is not narrow or severely circumscribed but is open-ended and covers any "good cause" found by the Commission. 18 C.F.R. Sec. 4.83. It is manifest, therefore, that there was jurisdiction in the Commission to cancel, rescind or revoke the temporary permit granted the defendants for fraud. And, as we have already observed, the County recognized this power and initially invoked in its appeal of July 22 the jurisdiction of the Commission to rescind the temporary permit issued to the defendants. In so acting it was adopting the proper avenue for the relief it sought.
 
 
 8
 When the Commission refused to rescind its permit, the proper remedy for the County, if it was dissatisfied with the decision, was to petition for a rehearing by the Commission as provided and mandated in the Act. If dissatisfied with the action of the Commission in denying rehearing, the exclusive jurisdiction to review a decision of the Commission, whether it was to rescind the grant of a temporary permit or not, was then vested in the appropriate Court of Appeals. There is no de novo jurisdiction in either the State or the District Court to review, reverse or invalidate the action of the Commission in ruling on such petition to rescind. That was expressly held in City of Tacoma v. Taxpayers, 357 U.S. 320, 335-36, 78 S.Ct. 1209, 1218-19, 2 L.Ed.2d 1345 (1958). In that case, the Court, speaking to Sec. 825l of the Federal Power Act, said:
 
 
 9
 "This statute (Sec. 825l, 16 U.S.C.) is written in simple words of plain meaning and leaves no room to doubt the congressional purpose and intent.... It there provided that any party aggrieved by the Commission's order may have judicial review, upon all issues raised before the Commission in the motion for rehearing, by the Court of Appeals which 'shall have exclusive jurisdiction to affirm, modify, or set aside such order, in whole or in part,' and that '[t]he judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification ....' It thereby necessarily precluded de novo litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review. Hence, upon judicial review of the Commission's order, all objections to the order, to the license it directs to be issued, and to the legal competence of the licensee to execute its terms, must be made in the Court of Appeals or not at all."
 
 
 10
 This ruling has been strictly adhered to in subsequent decisions, involving both proceedings before the FERC and before other federal administrative agencies. See City of Rochester v. Bond, 603 F.2d 927, 935 (D.C.Cir.1979); Town of Springfield, Vt. v. McCarren, 549 F.Supp. 1134, 1155 (D.C.D.Vt.1982). The rationale for such adherence was fully explicated in Bond. There, the Court said (603 F.2d at 936):
 
 
 11
 "First, we disagree that the district court may exercise concurrent jurisdiction merely because a violation of NEPA is alleged. The allegation may be raised directly in the courts of appeals; and insofar as it may affect the lawfulness of a directly appealable order we think it must be. The numerous cases cited by appellants in which district courts exercised original jurisdiction over suits complaining of NEPA violations are not to the contrary.
 
 
 12
 "The rationale for statutory review is that coherence and economy are best served if all suits pertaining to designated agency decisions are segregated in particular courts. The choice of forum is, as we have said, for Congress and we cannot imagine that Congress intended the exclusivity vel non of statutory review to depend on the substantive infirmity alleged. The policy behind having a special review procedure in the first place similarly disfavors bifurcating jurisdiction over various substantive grounds between district court and the court of appeals. The likelihood of duplication and inconsistency would exist in either case."
 
 
 13
 Such rule has been applied, even where it was alleged in the district court action that the action of the administrative agency represented violations of other federal statutes,[5] or where the plaintiff was not a party to the administrative proceedings and had no notice of such proceedings.[6] Moreover, the Act in this case specifically provides that "[n]o proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon." Sec. 825l (a), 16 U.S.C.
 
 
 14
 The plaintiffs argue that Montana-Dakota Co. v. Northwestern Pub. Serv. Co., supra, 341 U.S. 246, 71 S.Ct. 692, supports their right of action here. We do not so read that authority. The relief the plaintiffs sought in that case was similar to that requested by the plaintiffs here" It sought to invalidate an action of the Commission under the Federal Power Act by an independent action in the District Court asserting fraud and deceit and seeking damages, something the County does not ask for here. One substantial difference between that case and this is a difference which makes the retention of this case by the District Court more impermissible. The plaintiff in Montana-Dakota had not raised the issue of fraud before the Commission and had the claim dismissed; the County here, however, raised the plea before the Commission and had lost. The District Court in MontanaDakota sustained the suit on the assumed ground that since the plaintiff's claim, just as the claim of the plaintiffs in this case, was for fraud and deceit, the action was one within the de novo jurisdiction of the District Court and it granted relief to the plaintiff largely on the theory that the Commission could not give relief for fraud by way of an award of reparations or damages. That decision was appealed to the Supreme Court. The plaintiffs have quoted a number of isolated sentences from the opinion of the Supreme Court in that case which they claim supports their position. What they overlook, however, is the ultimate decision of the Supreme Court which found unequivocally that the plaintiff had not established a cause of action in the District Court. In reaching that conclusion, the Supreme Court assumed that the Commission did not have power to grant damages to the plaintiff. Nonetheless, it declared finally (341 U.S. at 254-55, 71 S.Ct. at 696-97):
 
 
 15
 "The fact that the Congress withheld from the Commission power to grant reparations does not require courts to entertain proceedings they cannot themselves decide in order indirectly to obtain Commission action which Congress did not allow to be taken directly. There is no indication in the Power Act that that was Congress' intent.
 
 
 16
 ....
 
 
 17
 "Under such circumstances, we conclude that, since the case involves only issues which a federal court cannot decide and can only refer to a body which also would have no independent jurisdiction to decide, it must decline the case forthrightly rather than resort to such improvisation."
 
 
 18
 That decision fits this case. By no form of improvisation could the District Court in this action in effect invalidate or rescind action by the Commission in a matter which Congress has committed to its exclusive jurisdiction. Yet that is precisely what the District Court has attempted to do in its indirect way by a mandatory injunction. In our opinion, it should have refused, just as the Supreme Court ruled the District Court should have done in Montana-Dakota, to entertain the action despite the claim of fraud and deceit.[7]
 
 
 19
 It follows that the County's exclusive remedy in this matter was by a petition for review with the appropriate Court of Appeals and not by an independent action in the District Court. We accordingly reverse the decision of the District Court sustaining its right to entertain this suit and remand the cause to that Court with direction to dismiss the complaint herein.
 
 
 20
 REVERSED.
 
 
 
 [1]
 Section 791a, et seq., 16 U.S.C
 
 
 [2]
 Sec. 825l (b), 16 U.S.C
 
 
 [3]
 The rules and regulations of the Commission have different provisions for filing notice of intent to file a competing application and for filing an application for exemption. The application of the County was filed on the approved form for notice of intent to file a competing application (Sec. 4.33(b) and (c) and not on the approved form for notice of intent to file an exemption application (Sec. 4.104(a)(2))
 
 
 [4]
 The evidence taken at trial indicated that the County knew almost a month before June 5 that the defendants would not withdraw its application for a temporary permit, yet it never took any steps to file a competing application or to seek an extension for such filing on or before June 5
 
 
 [5]
 Carey v. O'Donnell, 506 F.2d 107, 110 (D.C.Cir.), cert. denied 419 U.S. 1110, 95 S.Ct. 783, 42 L.Ed.2d 806 (1975)
 
 
 [6]
 City of Rochester v. Bond, supra, 603 F.2d at 937-38
 
 
 [7]
 Since we find the District Court was without the power to entertain the suit, we do not consider the merits of the County's claim of fraud