890 F.2d 255
 WILLIAMS NATURAL GAS COMPANY, a Utah Corporation, Plaintiff-Appellant,
Smith Cogeneration, Inc., an Oklahoma Corporation, and
Powersmith Co-Generation Project, a limited
partnership, Plaintiffs-Intervenors-Appellants,
v.
The CITY OF OKLAHOMA CITY, a Municipal Corporation, and
Oklahoma Natural Gas Company, a Delaware
Corporation, Defendants-Appellees.
 Nos. 89-6209, 89-6227 and 89-6228.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 22, 1989.
 
 Douglas E. Nordlinger of Skadden, Arps, Slate, Meagher & Flom, Washington, D.C. (J. Clayton La Grone, William R. Burkett & Steven L. Tolson of Hall, Estill, Hardwick, Gable, Golden & Nelson, Oklahoma City, Okl., John S.L. Katz and John N. Estes of Skadden, Arps, Slate, Meagher & Flom, Washington, D.C., and S. Paul Hammons of Andrews, Davis, Legg, Bixler, Milsten & Price, P.C., Oklahoma City, Okl., on the briefs), for plaintiff-appellant and plaintiffs-intervenors-appellants.
 Curtis M. Long of Huffman Arrington Kihle Gaberino & Dunn, Tulsa, Okl. (J. Clarke Kendall II, Gerald L. Hilsher, and Brad D. Fuller of Huffman Arrington Kihle Gaberino & Dunn, Burck Bailey, Harry H. Selph II, Doneen Douglas Jones, and Thomas J. Enis of Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., on the briefs), for defendants-appellees.
 Catherine C. Cook, Gen. Counsel, Jerome M. Feit, Sol., and Katherine Waldbauer filed an amicus curiae brief for the F.E.R.C.
 Before McKAY, LOGAN, and BRORBY, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 This appeal arises from the United States District Court for the Western District of Oklahoma, where that court denied appellant's motion to construe federal condemnation rights under the Natural Gas Act and to disregard and stay the order of the Oklahoma County District Court. The order of the federal district court, issued May 30, 1989, effectively denied appellants full enforcement of a Federal Energy Regulatory Commission ("FERC" or "Commission") certificate authorizing appellants to construct and operate a natural gas pipeline to service the PowerSmith Cogeneration Project's ("PowerSmith") cogeneration facility in Oklahoma City.[1]
 
 
 2
 We find the state court lacked jurisdiction to entertain a collateral challenge to the FERC certificate and, accordingly, we REVERSE.
 
 I. Statement of the Case
 
 3
 The dispute has its genesis in the competition between appellee Williams Natural Gas Company ("Williams") and appellant Oklahoma Natural Gas Company ("ONG") for the contract to transport natural gas to the PowerSmith facility--a competition eventually won by Williams. In order to service PowerSmith, Williams needed to construct a twelve-mile extension of an existing interstate pipeline to PowerSmith. As an interstate "natural-gas company" under the Natural Gas Act ("NGA"), 15 U.S.C. Secs. 717-717w (1988), Williams could not construct or operate the extension without applying to and receiving from FERC, pursuant to Sec. 7(c) of the NGA, 15 U.S.C. Sec. 717f(c), an authorizing certificate of public convenience and necessity.
 
 
 4
 ONG is the local distribution company with a city franchise to sell, transport and distribute natural gas to the general public in Oklahoma City. The city franchise grants ONG the right to construct, operate and maintain facilities in the public streets and other public ways for its distribution purposes. Williams' pipeline construction would also require access to and use of the streets of Oklahoma City. Therefore, on October 18, 1988, before Williams was able to complete its application to FERC, ONG commenced the race to the courthouse and filed a declaratory judgment action in Oklahoma County District Court, asserting its franchise gives it the right to use City streets to the exclusion of a nonfranchised transporter. Williams and PowerSmith answered on November 10, 1988, asserting as a defense that the NGA, 15 U.S.C. Secs. 717-717w, preempts Oklahoma franchise law and therefore Williams was not required to obtain a franchise.
 
 
 5
 On October 28, 1988, ten days after ONG had filed its action in state court, Williams applied to FERC for the certificate of public convenience and necessity authorizing the construction and operation of the PowerSmith pipeline. ONG responded by protesting and intervening in opposition to Williams' application. In its intervention, ONG contested FERC's jurisdiction to regulate the proposed pipeline, questioned the sufficiency and substance of Williams' application and urged the Commission to explore alternative proposals.
 
 
 6
 More specifically, in its challenge to FERC's jurisdiction, ONG argued that the facilities proposed by Williams should be subject to local rather than federal regulation: "[T]he proposal, notwithstanding that it is cast as an application to expand service by an interstate pipeline, in fact relates to service in the nature of distribution or intrastate transportation," and "[a]s such, the facilities are local in nature and should be subject not to FERC jurisdiction, but rather to local regulation...." Indeed, ONG argued, "[t]his case cries out for local, not federal, regulation."
 
 
 7
 On February 16, 1989, after denying ONG's request for a hearing in the matter, FERC granted Williams a certificate authorizing and directing Williams to construct and operate the PowerSmith pipeline. As to ONG's jurisdictional contentions, FERC found that the facilities proposed by Williams were within its jurisdiction and therefore subject to subsections (c) and (e) of Sec. 7 of the NGA, 15 U.S.C. Sec. 717f(c), (e). Williams Natural Gas Co., 46 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,160 (1989). In support of this finding FERC determined that the facilities proposed bore little resemblance to a local distribution system. Further, incorporating language from its previous decision in Panhandle Eastern Pipe Line Co., 42 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,076 (1988), the Commission stated,
 
 
 8
 "[I]rrespective of any local effects resulting from the by-pass, we believe that the transportation service at issue here essentially concerns Federal interests, that is, those embodied in developing interstate transportation policy that provides consumers with a variety of supply options by promoting a competitively priced spot market for natural gas."
 
 
 9
 Williams, 46 Fed.Energy Reg.Comm'n Rep. (CCH) p 61,160 at 61,559 (quoting Panhandle ).
 
 
 10
 On March 1, 1989, ONG filed with FERC a Request for Rehearing and Motion to Stay the FERC Order. FERC denied ONG's motion to stay on March 31, 1989, and denied ONG's request for rehearing on May 31, 1989. 47 Fed.Energy Reg. Comm'n Rep. (CCH) p 61,308, 1989 FERC LEXIS 1363.[2]
 
 
 11
 Also on February 16, 1989, the same day FERC issued its order, the Oklahoma state court ruled in ONG's declaratory judgment action. The court held, under Oklahoma law, ONG's franchise insulates it from competition in Oklahoma City from nonfranchisees. The state court specifically reserved for a later time (pending study of further briefs to be submitted by the parties) the issue whether federal law preempts the requirements of Oklahoma law and, thus, whether the authority of a FERC certificate negates the Oklahoma franchise requirement.
 
 
 12
 On March 28, approximately six weeks after the orders of FERC and the state court had been issued, Williams brought an action to enforce the FERC certificate in the United States District Court for the Western District of Oklahoma pursuant to Sec. 7(h) of the NGA, 15 U.S.C. Sec. 717f(h). Specifically, Williams sought to condemn rights of way across city streets to construct and operate the PowerSmith pipeline under the FERC certificate and to quiet Williams' title to those rights of way as against ONG's franchise rights. Thereafter, by order of April 18, the federal district court authorized Williams to condemn city rights of way "for the purpose of laying a pipeline" pursuant to the FERC certificate. However, the court's order made no mention of Williams' ability to "operate" the pipeline.
 
 
 13
 In response, on April 28, ONG sought and obtained from the state district court a temporary restraining order ("TRO") enjoining Williams from constructing the pipeline across city streets. On May 1, the federal district court responded by enjoining enforcement of the state TRO, finding that it interfered with its jurisdiction and order permitting the construction. However, in issuing this order, the federal court declined to enjoin the state court's consideration of the preemption issue and abstained from ruling on the question of federal preemption because that issue had been first presented to the state court.
 
 
 14
 On May 11, Williams and PowerSmith requested the federal district court to reconsider its decision to abstain and again requested the court to enjoin the state court's consideration of the preemption question. However, on May 19, while this motion to reconsider was pending, the state court decided the preemption issue before it, holding the FERC certificate did not preempt the state franchise requirement. The state court therefore permanently enjoined the construction and operation of the pipeline, notwithstanding the authority of the FERC certificate.[3]
 
 
 15
 After the state court granted its injunction, the federal district court issued its final order on May 22, granting the condemnation rights to Williams "for the purpose of the construction, maintenance and operation" of the pipeline. The court then held a hearing on May 24 to consider a further request by Williams and PowerSmith to construe federal condemnation rights under the NGA and to stay the enforcement of the state court order to the extent it interfered with the May 22 condemnation order. Williams and PowerSmith argued the state court injunction was an impermissible infringement upon the federal district court's exclusive condemnation jurisdiction under Sec. 7(h) to enforce the FERC certificate. After further briefing by the parties, the federal court, in an order issued May 30, refused to grant further injunctive relief and declined to alter its previous decision to abstain. The court concluded that the intervening state court decision on preemption had effectively deprived the federal courts of authority to reverse or reconsider the issue. The court believed itself bound by the doctrine of Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923), to defer to the state court's decision, with appellate relief available to Williams only through the Oklahoma Supreme Court.[4] However, the court certified the matter for immediate review to this court under 28 U.S.C. Sec. 1292(b).[5]
 
 II. Analysis
 
 16
 The issues presented to this court in the parties' briefs focus primarily on the merits of the federal district court's order of May 30, 1989. Thus framed, we are urged to decide whether the district court, relying upon the Rooker doctrine, erred by abstaining from deciding the question of federal preemption and by refusing to enjoin enforcement of the state court decision. Additionally, the appellants urge this court to decide the underlying substantive issues of whether the Oklahoma franchise requirement is preempted by the NGA and/or invalid under the commerce clause. However, we cannot even attempt to address these issues until we air certain core jurisdictional issues that lurk beneath the surface of the controversy.
 
 
 17
 In an introduction to their brief, appellants present a three-part analysis of what they view to be the exclusive jurisdiction of FERC to handle the issues of this case. First, appellants submit FERC is empowered with the exclusive authority to regulate the interstate transportation of natural gas and, accordingly, the PowerSmith pipeline. Thus, they argue, the state proceeding was barred from the outset. Secondly, they argue the provisions of NGA Sec. 19(b), 15 U.S.C. Sec. 717r(b) (1988), create the exclusive avenue for judicial review of FERC orders. Third, and as a corollary to the second, appellants contend the validity and conditions of a FERC certificate cannot be collaterally attacked in federal district court during an eminent domain proceeding pursuant to NGA Sec. 7(h).
 
 
 18
 We choose not to address the appellant's first jurisdictional point for two reasons. First, so expansive an argument virtually assumes the conclusion of the underlying, substantive federal preemption question.[6] Second, and more importantly, we view this argument to be unnecessary to determine the proper jurisdictional course here, where FERC issued its certification order before the state court entertained issues of federal jurisdiction or preemption. We proceed to the second part of appellants' jurisdictional analysis.[7]
 
 
 19
 A. The Exclusive Judicial Review Provisions of NGA Sec. 19.
 
 
 20
 It is well established that Congress, acting within its constitutional powers, may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had. City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 336, 78 S.Ct. 1209, 1218, 2 L.Ed.2d 1345 (1958). Thus, we begin our jurisdictional analysis with the statutorily provided means for contesting a FERC certificate issued pursuant to Sec. 7(c) of the NGA. First, Sec. 19(a) of the NGA, 15 U.S.C. Sec. 717r(a), provides in pertinent part:
 
 
 21
 (a) Any person, State, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person ... is a party may apply for a rehearing within thirty days after the issuance of such order. The application for rehearing shall set forth specifically the ground or grounds upon which such application is based. Upon such application the Commission shall have power to grant or deny rehearing or to abrogate or modify its order without further hearing.
 
 
 22
 Consistent with these requirements, ONG timely filed on March 1 its request for a rehearing before FERC. After that request was denied by FERC on May 31, ONG further pressed its appeal to the Court of Appeals for the District of Columbia Circuit, in accordance with Sec. 19(b) of the NGA, 15 U.S.C. Sec. 717r(b):
 
 
 23
 (b) Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part.... Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do.... The judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in sections 346 and 347 of Title 28.
 
 
 24
 (Emphasis added.)
 
 
 25
 As the statutory language plainly states, the special judicial review provisions of Sec. 19 are exclusive. McCulloch Interstate Gas Corp. v. Federal Power Comm'n, 536 F.2d 910, 913 (10th Cir.1976) (citing Whitney Nat'l Bank v. Bank of New Orleans Bank & Trust Co., 379 U.S. 411, 420, 422, 85 S.Ct. 551, 557, 558, 13 L.Ed.2d 386 (1964)). The provisions of Sec. 19 are nearly identical to the judicial review provisions of various other federal regulatory programs. In each case, these provisions have been interpreted to establish an exclusive scheme of review. See, e.g., City of Tacoma, 357 U.S. at 334-36, 78 S.Ct. at 1217-18 (interpreting the provisions of Federal Power Act ("FPA"), Sec. 313(b), 16 U.S.C. Sec. 825l (b)); United States by Donovan v. Howard Electric Co., 798 F.2d 392, 395 (10th Cir.1986) (Occupational Safety and Health Act, 29 U.S.C. Sec. 660(a)); United States v. McBride, 788 F.2d 1429, 1432 (10th Cir.1986) (Federal Aviation Act ("FAA"), 49 U.S.C. Sec. 1486(a), (d)); County of Halifax, Va. v. Lever, 718 F.2d 649, 652 (4th Cir.1983) (FPA, Sec. 313(b), 16 U.S.C. Sec. 8251(b)); City of Rochester v. Bond, 603 F.2d 927, 934-35 (D.C.Cir.1979) (FAA, 49 U.S.C. Sec. 1486(a), (d)).
 
 
 26
 The watershed case in this regard was City of Tacoma. In City of Tacoma, the City sought to obtain a license from the Federal Power Commission ("FPC") to construct a power project on the Cowlitz River in the state of Washington. One of the project's dams would result in the total inundation of a state-owned fish hatchery. The State intervened and participated in the hearings before the Commission and alleged, inter alia, that the project would violate a state law, Wash.Rev.Code Sec. 75.20.010, which required the State's permission to construct any dam exceeding certain size specifications. Shortly thereafter the Commission granted the license. The State then petitioned for a rehearing, which was denied.
 
 
 27
 Pursuant to Sec. 313(b) of the FPA, the State petitioned for a review of the Commission's order before the Court of Appeals for the Ninth Circuit, where the FPC's decision was affirmed. The Supreme Court denied certiorari. In a subsequent state proceeding, the City sought a judgment declaring valid a large issue of revenue bonds to finance the construction of the project. The State answered and filed a cross-complaint alleging that the project would interfere with the navigation of the Cowlitz River, in violation of state law Wash.Rev.Code Sec. 80.40.010. The state trial court entered judgment in favor of the State and enjoined the City from constructing the project. The Supreme Court of Washington affirmed. The United States Supreme Court reversed, finding the objections raised in state court to the FPC license to be "impermissible collateral attacks" under Sec. 313(b):
 
 
 28
 [Section 313(b) of the Federal Power Act] is written in simple words of plain meaning and leaves no room to doubt the congressional purpose and intent.... It thereby necessarily precluded de novo litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review.
 
 
 29
 357 U.S. at 335-36, 78 S.Ct. at 1218.
 
 
 30
 Judicial review under Sec. 19(b) is exclusive in the courts of appeals once the FERC certificate issues. Cf. Whitney Nat'l Bank, 379 U.S. at 421-22, 85 S.Ct. at 558. In Whitney Nat'l Bank, the Court applied City of Tacoma, to hold that, under the Bank Holding Company Act of 1956, challengers to a determination of the Federal Reserve Board must first bring their attack before the Board, subject only to review by the court of appeals. This review structure parallels that of Sec. 19, where parties must first appeal to FERC.[8]
 
 
 31
 Thus, a challenger may not collaterally attack the validity of a prior FERC order in a subsequent proceeding. McCulloch, 536 F.2d at 913 (quoted in Howard Electric, 798 F.2d at 394). Moreover, the prohibition on collateral attacks applies whether the collateral action is brought in state court, e.g., City of Tacoma, or federal court, e.g., McCulloch. Our interpretation of Sec. 19 is entirely consistent with Sec. 10(b) of the Administrative Procedure Act, 5 U.S.C. Sec. 703 (1976), which provides "[t]he form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence of inadequacy thereof, any applicable form of legal action...." Cf. City of Rochester v. Bond, 603 F.2d at 935.
 
 
 32
 Furthermore, we see nothing in the substantive character of ONG's challenges to the FERC order that would exempt those arguments from the statutory appellate scheme. Here again, City of Tacoma is helpful. There the Supreme Court read Sec. 313(b) of the FPA to "necessarily preclude[ ] de novo litigation between the parties of all issues inhering in the controversy." 357 U.S. at 336, 78 S.Ct. at 1218 (emphasis added). We would be hard pressed to formulate a doctrine with a more expansive scope.
 
 
 33
 Additionally, we fail to find provision in Sec. 19 of the NGA for the bifurcation of judicial review along substantive lines. This is not surprising, however, given that such a procedure would negate most of the benefits attending the "exclusive" scheme of review. In City of Rochester v. Bond, the D.C. Circuit addressed this same issue when it confronted a collateral challenge to a determination of the Federal Aviation Administration based on another federal statute, the National Environmental Policy Act ("NEPA"):
 
 
 34
 First, we disagree that the district court may exercise concurrent jurisdiction merely because a violation of NEPA is alleged. The allegation may be raised directly in the courts of appeals; and insofar as it may affect the lawfulness of a directly appealable order we think it must be....
 
 
 35
 The rationale for statutory review is that coherence and economy are best served if all suits pertaining to designated agency decisions are segregated in particular courts. The choice of forum is, as we have said, for Congress and we cannot imagine that Congress intended the exclusivity vel non of statutory review to depend on the substantive infirmity alleged. The policy behind having a special review procedure in the first place similarly disfavors bifurcating jurisdiction over various substantive grounds between district court and the court of appeals. The likelihood of duplication and inconsistency would exist in either case.
 
 
 36
 603 F.2d at 936 (footnotes omitted).
 
 
 37
 Here, however characterized, the state court's consideration of the preemption issue ultimately challenges FERC's determination of its own jurisdiction. Jurisdiction is not an issue with which FERC is unfamiliar or which it is incapable of addressing on appeal. In fact, as we have previously held, the "mode of challenging an agency's jurisdictional decision is by direct attack." Howard Electric, 798 F.2d at 394, and McCulloch, 536 F.2d at 913 (both citing Callanan Road Co. v. United States, 345 U.S. 507, 512, 73 S.Ct. 803, 806, 97 L.Ed. 1206 (1953)).
 
 
 38
 As we have already chronicled, ONG contested the jurisdiction of FERC in its original intervention and protest before the Commission. ONG's jurisdictional arguments were laced with the theme of conflict between state and federal regulation. (However, whether intentionally or unintentionally, ONG never expressly advanced those arguments in terms of "preemption.") FERC responded in kind by discussing, in its order of February 19, 1989, its view as to why the pipeline was essentially a federal concern and subject to its jurisdiction. Williams Natural Gas Co., 46 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,160, at 61,559 (1989).
 
 
 39
 ONG again raised the preemption argument in everything but name in its request for rehearing before FERC. In its specification of errors, ONG contended the Commission erred in failing to find that the PowerSmith facilities, and the activities thereon, were matters of local interest which are not subject to FERC jurisdiction, but rather are subject to the jurisdiction of the Oklahoma Corporation Commission. Although this argument expressly hinged on the language of Sec. 1(b) of the NGA, 15 U.S.C. Sec. 717(b),[9] ONG argued more broadly:
 
 
 40
 When enacting the NGA, ... Congress created a dual state-federal regulatory scheme over natural gas. The manifest purpose in enacting the NGA was to close regulatory gaps by complementing and strengthening state regulation. See Panhandle Eastern Pipe Line Co. v. Indiana Public Service Comm., 332 U.S. 507 [68 S.Ct. 190, 92 L.Ed. 128] (1947). Moreover, "Congress did not desire comprehensive federal regulation; much authority was reserved for the States...." Transcontinental Gas Pipe Line Corp. v. Federal Power Comm., 365 U.S. 1, 19 [81 S.Ct. 435, 445, 5 L.Ed.2d 377] (1961).
 
 
 41
 ... Thus, while Congress made sales for resale and the transportation of natural gas in interstate commerce subject to federal regulation, Congress expressly withheld from federal regulatory jurisdiction all other transportation of natural gas.
 
 
 42
 In denying the rehearing request, FERC once more expressed its view on the subject of federal jurisdiction, noting that it completely disapproved of the conflicting state opinion. Williams Natural Gas Co., 47 Fed.Energy Reg.Comm'n Rep. (CCH) p 61,308, at n. 5 (1989), 1989 FERC LEXIS 1363.
 
 
 43
 However, our conclusion does not depend on a finding that ONG implicitly or expressly submitted the preemption issue to FERC. Instead, it is sufficient to hold that the issue could have and should have been raised before FERC. Again, the analysis of the Supreme Court in City of Tacoma is instructive:We think these recitals show that the very issue upon which the respondents stand here was raised and litigated in the Court of Appeals and decided by its judgment. But even if it might be thought that this issue was not raised in the Court of Appeals, it cannot be doubted that it could and should have been, for that was the court to which Congress had given "exclusive jurisdiction to affirm, modify, or set aside" the Commission's order. And the State may not reserve the point, for another round of piecemeal litigation, by remaining silent on the issue while its action to review and reverse the Commission's order was pending in that court....
 
 357 U.S. at 339, 78 S.Ct. at 1220.[10]
 
 44
 We need not reach the question of whether the various arguments by ONG in FERC proceedings were sufficient, for purposes of Sec. 19(b), to permit argument on the preemption issue before the D.C. Circuit. Nor do we feel compelled to explore whether ONG has, in fact, submitted the issue to that court. We hold only that ONG could have and should have raised the preemption issue before FERC originally or upon its motion for rehearing. The issue may be advanced by direct attack, pursuant to the appellate structure of Sec. 19(b), or not at all. City of Tacoma, 357 U.S. at 336, 78 S.Ct. at 1218. Accordingly, because ONG filed its petition for review under Sec. 19(b) with the United States Court of Appeals for the D.C. Circuit, this court cannot reach the merits of the preemption issue.
 
 
 45
 The structure Congress has provided to litigate and resolve disputes arising under the Natural Gas Act should not be lightly disregarded. In the instant case it is apparent that ONG filed its action in state court as a "preemptive strike." It makes little sense for the state court action to have been filed unless ONG at the time of filing knew or had reason to believe that Williams would be awarded the requisite certificate of public convenience and necessity. The roadway to resolution of the dispute between Williams and ONG has been both charted and mandated by Congress. It makes no sense to permit the parties to chart their own route and thus allow piecemeal and unending litigation to ensue.
 
 
 46
 We hold that the proceedings in the state court that resulted in the order enjoining Williams' exercise of rights granted in the FERC certificate constituted an impermissible collateral attack on a FERC order in contravention of Sec. 19 of the NGA. Thus, the federal district court erred in refusing to enjoin the enforcement of the state court injunction. We also hold that a collateral challenge to the FERC order could not be entertained by the federal district court. We agree with the appellants that the eminent domain authority granted the district courts under Sec. 7(h) of the NGA, 15 U.S.C. Sec. 717f(h), does not provide challengers with an additional forum to attack the substance and validity of a FERC order. The district court's function under the statute is not appellate but, rather, to provide for enforcement. See McBride, 788 F.2d at 1432 (addressing an enforcement action under the FAA, 49 U.S.C. Sec. 1487).
 
 
 47
 B. The Rooker Doctrine.
 
 
 48
 Finally, we do not view our conclusion that the state court lacks appellate jurisdiction over the FERC determination to be at odds with the doctrine of Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). Instead, we consider it Rooker 's necessary complement.
 
 
 49
 In Rooker, the Supreme Court held that the lower federal courts do not have appellate jurisdiction to review state court decisions. Such jurisdiction is vested only in the state appellate courts and in the Supreme Court of the United States. 263 U.S. at 416, 44 S.Ct. at 150. The rule applies even when the state court decision is challenged as unconstitutional, id.; District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303, 1314, 75 L.Ed.2d 206 (1983); Van Sickle v. Holloway, 791 F.2d 1431, 1436 (10th Cir.1986), or when the state court erroneously decides a federal question, see Texaco Inc. v. Pennzoil Co., 784 F.2d 1133, 1142 (2d Cir.1986), rev'd on other grounds, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).
 
 
 50
 As the Supreme Court articulated in Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 286, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970), the Rooker doctrine is a necessity in a nation with two separate legal systems:
 
 
 51
 [T]his dual system could not function if state and federal courts were free to fight each other for control of a particular case. Thus, in order to make the dual system work and "to prevent needless friction between state and federal courts," Oklahoma Packing Co. v. Gas Co., 309 U.S. 4, 9, 60 S.Ct. 215, 218, 84 L.Ed. 447 (1940), it was necessary to work out lines of demarcation between the two systems.
 
 
 52
 However, the Rooker "line of demarcation," and the principles of comity it represents, cannot be observed unilaterally if it is to achieve its desired effects. Just as the federal courts lack jurisdiction to review the decisions of the state courts, so also must state courts defer to the federal appellate process mandated by Congress.[11] What is sauce for the goose is also sauce for the gander. Otherwise, the "needless friction" that Rooker seeks to prevent would be commonplace.
 
 
 53
 Here, despite the existence of the prior FERC determination and the exclusive review provisions of Sec. 19, the state court proceeded to decide a question that could have and should have been raised before FERC and, based on its determination of that issue, enjoined enforcement of the FERC order. We do not dispute the assertion of the appellees that the Oklahoma courts have jurisdiction to decide questions of federal preemption. See, e.g., Chick Kam Choo v. Exxon Corp., 486 U.S. 140, ----, 108 S.Ct. 1684, 1691, 100 L.Ed.2d 127 (1988). However, that issue was not advanced in a vacuum. Preemption was considered by the state court only after the FERC certificate issued and after the exclusive judicial review provisions of Sec. 19 attached.[12] Consequently, the state action crosses the Rooker boundary, just as a federal court exceeds its jurisdiction when it disregards the exclusivity of a state's ongoing appellate process. This court will not misuse Rooker to shield a state court injunction that runs afoul of the very principles of comity that lay at Rooker 's base.[13]
 
 
 54
 Thus, it is our view that the deference afforded the decisions of state courts under Rooker is not warranted where, as here, a state court has erroneously taken appellate jurisdiction over issues that have been previously decided by a federal agency, or when review of those issues could have and should have been sought pursuant to the federal statutory scheme.
 
 
 55
 C. Conclusion.
 
 
 56
 We therefore hold, upon the issuance of a FERC certificate pursuant to Sec. 7(c) of the NGA, 15 U.S.C. Sec. 717f(c), the provisions of Sec. 19(a), (b) provided the exclusive course for judicial review of the FERC decision and barred collateral attack in either the state or federal district courts as to those issues that could have been raised in the FERC proceeding or appeal. The appellees have chosen the wrong roads, state and federal, for challenging FERC's order. They are left with their appeal before the Court of Appeals for the District of Columbia and, to the extent they have complied with the provisions of Sec. 19(b), will be able there to present all of their challenges to the validity of the FERC certificate.
 
 
 57
 Accordingly, the judgment of the district court is REVERSED and the cause REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 PowerSmith Cogeneration Project, Limited Partnership, is a developer of cogeneration projects (facilities that burn fuel for the production of electric and thermal energy, such as steam). PowerSmith is now completing construction of a 108-megawatt, $80 million cogeneration facility in Oklahoma City, on the grounds of a tire manufacturing plant owned by Firestone Tire & Rubber Company. The facility is designed to burn natural gas
 
 
 [2]
 ONG subsequently filed a petition for review of the FERC orders with the United States Court of Appeals for the District of Columbia Circuit. Oklahoma Natural Gas Co. v. FERC, No. 89-1376 (D.C.Cir. filed June 12, 1989). Williams and PowerSmith have moved to transfer that petition for review to this Court
 
 
 [3]
 FERC, in its decision of May 31 declining ONG's request for a rehearing, expressed its complete disapproval of the state district court's decision and reaffirmed its conclusion that Williams' proposed service to PowerSmith would benefit the public interest. Williams Natural Gas Co., 47 Fed.Energy Reg.Comm'n Rep. (CCH) p 61,308; 1989 FERC LEXIS 1363
 
 
 [4]
 An appeal to the Oklahoma Supreme Court is pending from the decision of the District Court for Oklahoma County, Oklahoma, captioned Smith Cogeneration, Inc. v. Oklahoma Natural Gas Co., No. 73649 (Okla. filed July 18, 1989)
 
 
 [5]
 Prior to oral argument, the appellants petitioned this court for emergency injunctive relief. We denied the relief requested in our order of July 24, 1989. Apparently in response to statements of the court at oral argument, appellees submitted a notice to this court of changed circumstances regarding appellants' emergency petition. We have not considered this material as it is in violation of Fed.R.Civ.P. 28(c) and 10th Cir. Rule 31.2.1
 
 
 [6]
 We note, without comment, the recent decision of the United States Court of Appeals for the Sixth Circuit in Michigan Consolidated Gas Co. v. Panhandle Eastern Pipe Line Co., 887 F.2d 1295 (6th Cir.1989), which held that Michigan's authority to regulate the interstate transportation of natural gas in the "bypass" of a local distribution company is preempted by the Natural Gas Act. As explained herein, we do not reach the merits of the preemption issue
 
 
 [7]
 Issues of jurisdiction are questions of law requiring de novo review. Walden v. Bartlett, 840 F.2d 771, 772-73 (10th Cir.1988)
 
 
 [8]
 Linguistically, the language of Sec. 19(b) providing for exclusive jurisdiction "upon the filing of such petition" with the court of appeals might permit a separate action if a federal or state court reviews an agency order before a petition for review can be filed, or if a petition is never filed. However, to allow parties to circumvent the scheme of judicial review under Sec. 19 simply by choosing not to file a petition for review with FERC or the court of appeals would be to allow precisely the type of collateral challenge that City of Tacoma condemned and would defeat the "exclusive" review provisions of Sec. 19(b). City of Rochester v. Bond, 603 F.2d at 935 (collateral challenge violated an exclusive statutory scheme of judicial review even where the challenger to an order of the Federal Aviation Administration was not a party to the administrative proceedings, had no actual notice of such proceedings, and thus failed to timely file a petition for review in the court of appeals). See also, McBride, 788 F.2d at 1432-33 (collateral action impermissible where the challenger to an agency order failed to file a timely appeal under the applicable statute); County of Halifax, Va. v. Lever, 718 F.2d at 651 (collateral action impermissible where the challenger to a FERC permit deliberately declined to press for relief through the available statutory means in favor of a collateral action in federal district court)
 
 
 [9]
 Section 1(b) of the NGA, 15 U.S.C. Sec. 717(b) provides:
 (b) The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas.
 
 
 [10]
 Although the City of Tacoma court did not find it necessary to hinge its conclusion upon an extra-statutory doctrine such as res judicata, estoppel, collateral estoppel, or waiver, 357 U.S. at 336-37, 78 S.Ct. at 1218-19, in United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966), the court held that res judicata principles may apply to an administrative agency's adjudication
 
 
 [11]
 This requirement is akin to the reciprocal nature of res judicata principles between the state and federal courts
 It would be unthinkable to suggest that state courts should be free to disregard the judgment of federal courts, given the basic requirement[s] that ... federal courts must honor state court judgments.... The requirement that federal court judgments command at least the central core of res judicata effects in state courts is "indispensable to federalism."
 
 
 [18]
 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4468, at 648-49 (1981) (footnotes omitted)
 
 
 [12]
 Appellees also assert that Pan American Petroleum Corp. v. Superior Court of Delaware, 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961), is dispositive here. We obviously disagree. The state court proceeding there was not a collateral challenge to a FERC order and thus was not violative of Sec. 19. Instead, the state court action was brought simply to enforce the terms of a contract
 A customer of Pan American sought to recover certain overpayments made to Pan American after an order of the Kansas Corporation Commission was declared invalid. By amended contract, refund of the overpayments was conditioned on such declaration. Earlier, Pan American had filed its rate schedules with the FPC, along with the basic contracts underlying those rates. Therefore, Pan American argued the rate could only be changed pursuant to Sec. 19 of the NGA. However, the actions of the FPC did not serve to abrogate the basic contract between the parties and the Court held that the state court was not deprived by the provisions of Sec. 19 or Sec. 22 of jurisdiction to decide questions of state contract law. 366 U.S. at 662-63, 81 S.Ct. at 1307-08.
 
 
 [13]
 As counsel for appellees expressed at oral argument, appellees would have us apply Rooker to bar the D.C. Circuit from reaching the preemption issue during its review of FERC certificate. This would be akin to allowing a federal district court's review of a state decision to thereafter deprive state appellate courts of jurisdiction to hear the same issue. Such a result is impermissible under Rooker